UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

CHRISTINE M. NAPIERSKI, an aggrieved candidate for public office in the Democratic Party, and EUGENE E. NAPIERSKI, an enrolled voter of the Democratic Party residing in the Town of Guilderland, New York,

**CIVIL ACTION**

Plaintiffs,

**COMPLAINT AND**
**JURY DEMAND**

-against-

THE GUILDERLAND DEMOCRATIC COMMITTEE, THE ALBANY COUNTY DEMOCRATIC COMMITTEE, JACOB CRAWFORD, individually and as Chairman or Acting Chairman, Guilderland Democratic Committee, JACK FLYNN, individually and as Chairman, Albany County Democratic Committee, ALBANY COUNTY BOARD OF ELECTIONS, MATTHEW J. CLYNE, in his official capacity as Commissioner, Albany County Board of Elections, RACHEL L. BLEDI, in her official capacity as Commissioner, Albany County Board of Elections, BRYAN M. CLENAHAN, Candidate for Guilderland Town Justice, and GREGORY J. WIER, Candidate for Guilderland Town Highway Superintendent,

Case No.  1:18-cv-846 (MAD/DJS)

Defendants.

---

Plaintiffs CHRISTINE M. NAPIERSKI, an aggrieved candidate for public office, and

EUGENE E. NAPIERSKI, an enrolled voter of the Democratic Party, by and through their

attorneys, Napierski, VanDenburgh, Napierski & O'Connor, LLP, as and for their

Complaint against the above-named defendants, state and allege as follows:

**PRELIMINARY STATEMENT**

The New York State Election Law provides for two explicit means by which the

state-recognized political parties may nominate their candidates for public office within

the various towns and villages. While most parties have opted to use the primary election

as the means to put the question of nomination to all of the eligible party voters, the Guilderland Democratic Committee ("GDC"), a division of the Albany County Democratic Committee ("ACDC") constituted in and for the Town of Guilderland in Albany County, New York, has opted to employ the other method, which is to hold a caucus. As articulated in this Complaint, the GDC has exploited the caucus method to ensure that the candidate it has hand-selected coasts through to nomination without any meaningful opposition or challenges. It does this by holding its caucus in a single location: a town park pavilion with a capacity of only roughly 2.1 % of the registered Democratic voters in the Town of Guilderland, the admission to which is conditioned on voters either paying an entry fee or proving sufficient residency status to a gate attendant such that the voter can put a sticker on their vehicle. The GDC has selected an ADA non-compliant location, with woefully inadequate, or non-existent, handicapped-accessible parking, rendering attendance by the disabled and elderly exceedingly difficult, if not impossible. The GDC has adopted no provisions for an absentee ballot system. While New York State law provides for the caucus, it contains strikingly little regulation as to how caucuses are to be conducted, or protected from vote fraud, disenfranchisement, and other illegalities.

By contrast, the Guilderland Republican Committee, and all minor parties in the Town of Guilderland, use the primary system. The primary election process is subject to the panoply of protections that ensure that all voters have easy access to the ballot, enjoy use of a polling place assigned to a limited number of voters and located close to home, can obtain an absentee ballot when necessary, and can enter a polling place and cast their ballots with little impediment. The primary system also allows for publication of the date of primary election well in advance so as to maximize voter turnout whereas the only

requirement for notice of the caucus is to post a written notice in ten locations in town, plus the Town Clerk and the Board of Elections, which may not have even been complied with here. The Democratic committees of other towns in Albany County use the primary election method. The primary system allows for a secret ballot; the caucus requires voters to publicly announce their vote. In the face of these realities, the GDC is unique in keeping its nomination process as close to the insiders as possible. The process as employed by the GDC violates the rights of plaintiff Christine M. Napierski, as a candidate, by severely limiting her access to the ballot, and it violates the rights of all eligible voters, like plaintiff Eugene E. Napierski, by discouraging and foreclosing their involvement in the political process, or for some, rendering it impossible. Plaintiffs therefore respectfully ask this Court to declare the caucus process as used by the GDC in this instance as violative of the U.S. Constitution and federal law, and to enjoin the GDC from proceeding with its caucus until it can be held in a manner consistent with all applicable federal legal and constitutional provisions.

## JURY DEMAND

1.      Pursuant to Fed.R.Civ.P 38(b), plaintiffs demand a trial by jury on all issues so triable.

## JURISDICTION AND VENUE

2.       This Court has jurisdiction pursuant to 28 U.S.C. § 1331, because this action arises under the Constitution, laws, or treaties of the United States. More specifically, this action alleges violations of the Americans with Disabilities Act of 1990 (42 U.S.C. § 12101, et seq.), as well as violations of the First, Fourteenth, and Twenty-

Fourth Amendments of the United States Constitution, and seeks remedies pursuant to 42 U.S.C. §§ 1983 and 1988.

3.      This Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over the state law claim asserted in the Sixth Cause of Action because it forms part of the same case or controversy as the federal causes of action.

4.      Venue is appropriate in the Northern District of New York pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), because, upon information and belief, each and every defendant resides within the State of New York, and more specifically, within this Judicial District, as residence is defined in 28 U.S.C. § 1391(c), and because a substantial part of the events or omissions giving rise to this claim occurred in this Judicial District.

## PARTIES

5.      Plaintiff CHRISTINE M. NAPIERSKI (hereinafter "C. NAPIERSKI") is an adult individual who resides within the Town of Guilderland, County of Albany, New York, and who has declared her candidacy for the position of Town Justice of the Town of Guilderland.

6.      Plaintiff C. NAPIERSKI is an attorney admitted to practice in New York State, and has never been the subject of any action, proceeding, or disciplinary action that would have any impact upon her eligibility to serve as a Town Justice.

7.      Plaintiff C. NAPIERSKI is a registered voter in the State of New York, registered at her address in the Town of Guilderland, and is enrolled in the Democratic Party.

8.      Plaintiff EUGENE E. NAPIERSKI (hereinafter "E. NAPIERSKI") is an adult individual who resides within the Town of Guilderland, County of Albany, New York, and

who presently suffers from a physical disease that renders him immobile without the use of a motorized scooter or a wheelchair.

9.     Plaintiff E. NAPIERSKI is a registered voter in the State of New York, registered at his address in the Town of Guilderland, and is enrolled in the Democratic Party.

10.     Upon information and belief, defendant THE GUILDERLAND DEMOCRATIC COMMITTEE is a division of the Albany County Democratic Committee.

11.     Upon information and belief, defendant THE ALBANY COUNTY DEMOCRATIC COMMITTEE ("ACDC") is a County Committee of the New York State Democratic Party, duly formed and constituted pursuant to N.Y. Election Law § 2-104.

12.     Upon information and belief, defendant JACOB CRAWFORD is the Chairman or Acting Chairman of the GDC, duly elected pursuant to N.Y. Election Law § 2-112. Defendant CRAWFORD is sued individually and in his capacity as the Chairman or Acting Chairman of the GDC.

13.     Upon information and belief, defendant JACK FLYNN is the Chairman of the ACDC, duly elected pursuant to N.Y. Election Law § 2-112. Defendant FLYNN is sued individually and in his capacity as the Chairman of the ACDC.

14.     Upon information and belief, defendant ALBANY COUNTY BOARD OF ELECTIONS ("ACBOE") is a division of the government of the County of Albany, established pursuant to N.Y. Election Law § 3-200. Pursuant to N.Y. Election Law § 6-144, certificates of nomination arising out of a caucus held in the Town of Guilderland are filed with the ACBOE. Barring any successful challenges, the ACBOE is obligated to place

each political party's nominee on the general election ballot in each appropriate respective position.

15.     Upon information and belief, defendant MATTHEW J. CLYNE is a Commissioner of the ACBOE, duly appointed pursuant to N.Y. Election Law § 3-204.

16.     Upon information and belief, defendant RACHEL L. BLEDI is a Commissioner of the ACBOE, duly appointed pursuant to N.Y. Election Law § 3-204.

17.     Defendants CLYNE and BLEDI together constitute the ACBOE.

18.     Upon information and belief, defendant BRYAN M. CLENAHAN is an adult individual who resides within the Town of Guilderland, County of Albany, New York, and who has declared his candidacy for the position of Town Justice of the Town of Guilderland.

19.     Upon information and belief, defendant GREGORY J. WIER is an adult individual who resides within the Town of Guilderland, County of Albany, New York, and who has declared his candidacy for the position of Highway Superintendent of the Town of Guilderland.

**RELEVANT FACTS**

20.     The Town of Guilderland is a town located within the County of Albany, New York, that has a duly-established Justice Court. That court presently has three separate offices of Town Justice, each of which is an elective position pursuant to N.Y. Town Law § 20.

21.     On or about March 7, 2018, the Guilderland Town Supervisor and Town Board announced a vacancy in one of the three Justice offices after the resignation of the then-sitting Justice, Richard Sherwood. The town government announced that it would

6

appoint a Justice to fill the office until a Justice could be elected to begin a four-year elective term commencing January 1, 2019.

22.     The Guilderland town government accepted and reviewed applications from fourteen individuals interested in the appointment, including plaintiff C. NAPIERSKI and defendant CLENAHAN.

23.      After the completion of its review process, the Guilderland Town Board announced that it was appointing plaintiff C. NAPIERSKI to the vacancy on the court, and thereafter, plaintiff C. NAPIERSKI was sworn in as Town Justice on April 27, 2018 after her appointment on April 17, 2018, by a unanimous, bipartisan vote of the Town Board, and enactment by the Town Supervisor.

24.     After C. NAPIERSKI's appointment, she made it known that it was her intention to seek election to a full four-year term on the court, beginning January 1, 2019, and made it known that she would be intending to run as a Democrat on the next general election ballot, which is scheduled to be held on November 6, 2018.

25.     On or about May 17, 2018, C. NAPIERSKI was contacted by a committee member with the GDC who told her that the GDC would be very angry and not support her candidacy. That individual demanded that she withdraw her candidacy from consideration for the Justice position because the GDC was intending to endorse defendant CLENAHAN. Plaintiff C. NAPIERSKI received another call two days later from someone on behalf of the GDC, demanding that she withdraw and endorse CLENAHAN, and warning that if she were to challenge defendant CLENAHAN for the Democratic nomination, the GDC would see to it that she would never be elected to public office in the future.

26.     Defendant CLENAHAN is currently a sitting County Legislator on the Albany County Legislature. Upon information and belief, he is of counsel to the private law firm of Denise Randall, who occupies one of the other three Justice positions in the Town of Guilderland, and is Randall's son-in-law. Upon information and belief, defendant CLENAHAN is also counsel to New York State Senator Diane J. Savino.

27.     In the face of the direct threat from the GDC, C. NAPIERSKI has nevertheless determined that she will seek the Democratic nomination for Town Justice to appear on the general election ballot on November 6, 2018.

28.     As authorized by the New York Election Law and the Rules of the ACDC, the GDC selects its candidates for town-wide offices by a caucus, rather than a primary election, even though every other party in the Town uses primary elections to select their candidates.

29.     In order for C. NAPIERSKI to appear on the general election ballot as a Democrat, she must prevail in being awarded the nomination at a GDC caucus.

30.     C. NAPIERSKI attended a meeting of the GDC held on June 5, 2018, at which both she and defendant CLENAHAN gave statements to the committee and expressed their interest in the committee's endorsement for Town Justice. Thereafter, consistent with the threats and warnings C. NAPIERSKI had received demanding that she drop out of the race, and despite being the appointed incumbent, the GDC unanimously voted to endorse defendant CLENAHAN for Town Justice.

31.     The GDC has posted notice announcing that it will be holding its caucus on July 26, 2018, at 6:00 p.m. The GDC has chosen to hold its caucus in the Large Pavilion at Tawasentha Park, a public town park located in the Town of Guilderland. The notice

states that "[a]ll duly enrolled Democrats in the Town of Guilderland are eligible to vote at the caucus and are invited to attend." There are no additional caucus locations contained on the notice and, upon information and belief, the GDC has no intention of holding other caucuses in other locations on the same or any other date.

32.    Upon information and belief, according to the most current voter rolls maintained by the Albany County Board of Elections ("ACBOE"), the Town of Guilderland presently has approximately 9,202 enrolled Democratic voters.

33.    The Large Pavilion is a four-sided structure, one side of which is a wall, and the other three of which are open. According to the Town of Guilderland, the Large Pavilion can accommodate approximately 200 people.

34.    Upon information and belief, the GDC will be holding its annual fundraiser picnic in the same pavilion in the same park on the same day as the caucus, which will occur immediately before, and is scheduled to carry on up until the time of the caucus.

35.    Admission into Tawasentha Park requires either the payment of a fee of ten dollars per vehicle entering the park, or the possession of a resident park sticker affixed to the vehicle. To obtain a resident park sticker, a resident must provide proof of residency within the Town of Guilderland.

36.    Further, entry into the park is slow. All vehicles entering must stop at the entrance booth to display credentials or pay to ensure entry into the park.

37.    Upon information and belief, according to the most current voter rolls for the Town of Guilderland maintained by the Albany County Board of Elections ("ACBOE"), there are approximately 9,200 registered Democratic voters in the Town of Guilderland.

38.     Upon information and belief, there is only one designated handicapped parking space located at the Large Pavilion. This parking space lacks required buffer zones at its edges to accommodate vans and wheelchair lifts, and it lacks a sixty-inch-high sign as required by the ADA.

39.     Upon information and belief, the Large Pavilion is otherwise non-compliant with the ADA in that grades, surfaces, bathroom stalls, and seating fail to comply with the requirements of the ADA.

40.     Upon information and belief, the GDC holds its caucus in this location to specifically ensure that the members of the GDC are present to vote for whom the GDC has agreed to endorse, and to discourage, or render impossible, the attendance of members of the Democratic Party who have not been specifically selected or solicited to attend and support the endorsed candidates.

41.     First, notwithstanding the purported invitation to "all duly enrolled Democrats" to attend, the pavilion will fit approximately 200 people. The GDC is comprised of 60 members; the presence of those individuals and their spouses, significant others, guests, and/or families will easily consume upwards of 50-75% of the pavilion's capacity.

42.     At the last state primary election held in the Town of Guilderland during which Democratic voters could select candidates to offices other than local town office, approximately 1,431 Democratic voters cast ballots, amounting to approximately fifteen percent of the present number of enrolled Guilderland Democrats. Under the GDC's caucus scenario, were only 2% of the Town's enrolled Democrats to attend, the capacity of the designated caucus location would be exceeded because of the presence of the

members and families of the very committee that organized the caucus. Likewise, the parking lot at the pavilion is woefully inadequate to accommodate the number of caucus attendees that would be expected to be present. Making matters worse, the caucus is being held on the same night as a summer concert series with a musical act beginning in Tawasentha Park at 7:30 p.m. This is likely to attract concertgoers who arrive early, and would occupy a significant portion of the available parking. Thus, while the number of Democrats who turned out at the last local primary might otherwise be interested in attending the caucus, they would be unable because it would exceed the location's capacity.

43.     Second, those who do not have a vehicle registered in their name with a resident sticker affixed will have to pay a fee to enter the park and vote. Alternatively, those who do not have a sticker will have to ensure they possess sufficient proof of town residency to produce at a designated location beforehand, or to apply for a resident park sticker when they approach the entry gate to enter the park. This could needlessly result in unanticipated delay entering the park due to lack of knowledge about such a requirement, and therefore, the possibility that those voters will have missed the vote at the caucus.

44.     Third, the failure to provide more than one handicapped parking space at the location, and to otherwise ensure ADA compliance, discourages, at the very least, persons with disabilities from attending, and, at worst, renders their presence impossible.

45.     Plaintiff E. NAPIERSKI has a New York State-issued handicapped placard in his personal vehicle permitting him to park in designated handicapped parking spaces.

46.     Plaintiff E. NAPIERSKI wishes to attend the caucus and vote for plaintiff C. NAPIERSKI. However, he will be unable to do so because of the lack of available parking, and ADA-compliant accommodations at the pavilion. Moreover, if there is at least one other handicapped voter at the caucus who is parked in the single handicapped parking space at the Large Pavilion, E. NAPIERSKI will be unable to park in an ADA-compliant location from which he can access the caucus.

47.     Similarly, if E. NAPIERSKI is the first handicapped voter to arrive at the caucus, he will occupy the sole handicapped parking stall, thereby preventing any other handicapped voters from attending the caucus.

48.     In addition, E. NAPIERSKI's personal vehicle does not have a resident park sticker affixed. Also, E. NAPIERSKI occasionally drives other vehicles that are not registered in his name, but are instead registered to another individual who does not reside within the Town of Guilderland.

49.     Fourth, there is no provision in the Rules of the ACDC, or the rules or procedures promulgated by the GDC, for an absentee ballot to accommodate those eligible voters who are unable to attend due to lack of mobility, unavailability, or other reasons otherwise recognized under the Election Law as applicable to primary elections.

50.     The language in the New York Election Law expressly authorizes a party to hold its caucus in more than one location, by requiring that the notice of the caucus "specify the time and place or places, and the purpose of the caucus." N.Y. Election Law § 6-108(3). Thus, by statute, the GDC could have multiple caucus locations throughout the Town of Guilderland, a municipality geographically consisting of approximately 58 square miles, similarly to how primary and general elections are held in each, or nearly

each, of the 30 election districts. Instead, the GDC has rigged the system to exclude any candidate not endorsed by the GDC, by selecting a singular location that, moreover, provides unnecessary and illegal hurdles to significant portions of the eligible electorate.

51.    The GDC, like most local political committees, requires its members to commit significant amounts of personal time, and to expend sums of money at times, to further and facilitate the GDC's agenda. Thus, the committee members are expected to overcome any obstacles to ensure they are present, and to only vote for the endorsed candidate, lest those members lose the support of the GDC, and possibly face a primary challenge for their party committee membership at the next election for party officials.

52.    The Republican Party is the other major political party within the Town of Guilderland, and upon information and belief, it has endorsed a candidate who has begun the process of appearing on the Republican primary ballot by submitting nominating/designating petitions to the ACBOE.

53.    Upon information and belief, there are presently approximately 5,684 enrolled Republicans in the Town of Guilderland. Based purely upon voting trends that approximately resemble the partisan distribution in the Town, the candidates who will appear on the Democratic Party line on the general election ballot will enjoy a significant enrollment advantage.

54.    Accordingly, the candidates selected by the GDC at its caucus will likely be elected to their respective offices at the general election on November 6, 2018.

55.    By relying upon its unconstitutional, unlawful, and markedly unfair caucus system, the GDC has ensured that it retains the entrenched ability to hand-select the public officials of the Town of Guilderland.

56.     Upon information and belief, all of the conduct of the GDC alleged herein was engaged in with the express knowledge, consent, and approval of the ACDC and defendant FLYNN.

57.     Upon information and belief, all of the conduct of the GDC alleged herein was engaged in within the auspices of the Rules promulgated by the ACDC and defendant FLYNN.

58.     Upon information and belief, the ACDC and FLYNN know and knew that the GDC used a process that was intended to stifle challenges to the nomination of candidates selected by the GDC.

59.     Upon information and belief, the ACDC and FLYNN know and knew that the GDC process is intended to conjure as little interest as possible, and as many potential challenges as possible, among the Democratic Party electorate at large.

60.     Yet, the ACDC and FLYNN have done nothing to protect the franchise of the Guilderland Democratic voters.

61.     If the caucus scheduled for July 26, 2018, is permitted to proceed, plaintiffs will be irreparably harmed. As the causes of action alleged herein amount to deprivations of protected constitutional rights in connection with the elective process, there are no adequate remedies at law.

## AS AND FOR A FIRST CAUSE OF ACTION

62.     Plaintiffs repeat and reallege paragraphs 1 through 61 as if more fully set forth at length herein.

63.     The Americans With Disabilities Act of 1990 ("ADA") (42 U.S.C. § 12101, et seq.), prohibits discriminatory conduct against individuals with disabilities.

64.     Plaintiff E. NAPIERSKI suffers from a nerve disorder similar to Parkinson's Disease, that has severely diminished his mobility. E. NAPIERSKI is physically unable to ambulate without the use of a motorized scooter or wheelchair, and requires ramps and flat paved surfaces on which to travel, and handicapped-accessible bathroom facilities.

65.     Plaintiff E. NAPIERSKI further requires a handicapped designated parking space, such that he has close proximity to access ramps and surfaces, and will have ample room to exit his vehicle and obtain any necessary assistive device.

66.     The Tawasentha Park, and more specifically, the Large Pavilion at Tawasentha Park, is a place of "public accommodation" as that term is defined in 42 U.S.C. § 12181(7)(I).

67.     The Town of Guilderland charges a fee to reserve and use the Large Pavilion.

68.     Upon information and belief, the GDC paid a fee of $150.00 to use the Large Pavilion.

69.     The fee constitutes a lease payment, as the term "leases" is used in 42 U.S.C. § 12182.

70.     The Large Pavilion has only one designated handicapped parking stall.

71.     The Large Pavilion does not have sufficiently textured surfaces to negotiate a scooter or wheelchair.

72.     The Large Pavilion lacks accessible bathrooms, and the grading and slopes approaching the Large Pavilion fail to meet ADA standards.

73.     Accordingly, the GDC, as lessee of the Large Pavilion, violates the rights of plaintiff E. NAPIERSKI and all other disabled eligible voters in the Democratic Party.

74.    Further, upon information and belief, defendant CRAWFORD, as Chairman, has specifically intended that the GDC use the caucus system in the manner set forth herein so as to ensure that the GDC's endorsed candidates receive the Democratic Party's nomination, even if the caucus violates several rights of both candidates and voters.

## AS AND FOR A SECOND CAUSE OF ACTION

75.    Plaintiffs repeat and reallege paragraphs 1 through 74 as if more fully set forth at length herein.

76.    Those eligible voters who are not driving their own vehicle registered to them at an address within the Town of Guilderland, with a Town-approved resident park sticker affixed, must pay a fee of $10.00 to enter the Tawasentha Park in order to attend the caucus.

77.    If a resident voter does not arrive with a sticker already affixed to his/her car, that voter would have to bring proof of residency to an off-site location, such as the parks and recreation office, town hall, or the transfer station. The parks and recreation office—located across the street from the entry gate—closes at 3:30 p.m., well before voters are expected to arrive. The other locations require travel, and depending on the time of arrival, could result in a voter missing the caucus.

78.    The park entry fee effectively amounts to an unlawful poll tax, prohibited by the Twenty-Fourth Amendment of the United States Constitution, applied to the States and to defendants by the Fourteenth Amendment of the United States Constitution. See Harper v. Virginia Bd. of Elections, 383 U.S. 663 (1966).

79.     Similarly, the Voting Rights Act has declared that poll taxes are against public policy. 52 U.S.C. § 10306(a). A private right of action exists to enforce the prohibition on poll taxes. See Morse v. Republican Party of Virginia, 517 U.S. 186 (1996).

80.     Accordingly, the location for the caucus selected by the GDC and CRAWFORD, and upon information and belief, approved by ACDC and FLYNN, violates the rights under the United States Constitution of each and every eligible voter in the Town of Guilderland who arrives at the Tawasentha Park in a vehicle other than one registered to a town resident with a resident sticker affixed.

## AS AND FOR A THIRD CAUSE OF ACTION

81.     Plaintiffs repeat and reallege paragraphs 1 through 80 as if more fully set forth at length herein.

82.     The New York Election Law provides for the use of absentee and military ballots by all voters in primary elections who are unable to vote at their respective polling places on the day of a primary election because of absence, disability, or active military status.

83.     Further, the New York Election Law provides for sophisticated mechanisms to prevent fraud, errors, intimidation, and other violations at an election, including, but not limited to, the instillation of bipartisan poll inspectors at every polling place, and regulations pertaining to casting, tabulating, and handling ballots.

84.     The Election Law further provides that polling places must comply with the ADA, thereby ensuring that all voters, regardless of disability, can cast their ballot.

85.     The Election Law further provides for the use of affidavit ballots by any voters whose registration records are missing from the poll records.

17

86.     Likewise, Election Law § 4-104 provides for distribution of polling places such that there are polling places within (or in close proximity to) each election district. This provision eliminates the hardship involved in traveling to one central location to vote for a candidate.

87.     The Election Law further regulates the locations of polling places such that voters do not encounter impediments such as a fee to enter the polling place, or the application for a park sticker.

88.     Every other political party in the Town of Guilderland uses the primary election system to select its candidates for public office.

89.     Every other political party in the Town of Guilderland, in the election of its candidates, allows the use of absentee ballots by individuals who are unable to vote at a polling place.

90.     Upon information and belief, the GDC caucus is only open to eligible voters of the Democratic Party, and the GDC does not allow other persons, or more specifically poll inspectors or watchers, to attend.

91.     Further, the GDC holds a caucus in one insufficiently-sized location despite the fact that it is statutorily permitted to hold caucuses in multiple locations.

92.     Likewise, the GDC caucus does not allow for the use of absentee, military, or affidavit ballots, and upon information and belief, if a prospective voter's name is missing from the voter rolls, he/she will be turned away and will not be allowed to vote.

93.     Each and every one of these alleged facts occurs with the knowledge and consent, and at the behest of, defendants CRAWFORD, ACDC, and FLYNN.

94.     Election Law § 6-108(3) provides that only voters who appear in the "transcript of enrollments from the registration poll ledger" are eligible to participate in the caucus, further disenfranchising any voters who are duly registered but do not appear in the poll records.

95.     Plaintiff C. NAPIERSKI enjoys the First Amendment right to participate in the political process as a candidate, and to thereby seek nomination as a political party's candidate for public office.

96.     Plaintiff E. NAPIERSKI enjoys the First Amendment right to participate in the political process as a voter, to have access to the ballot, and to vote for the candidate of his choice.

97.     The use of the caucus system as applied to plaintiffs violates the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution, because candidates and voters in the Democratic Party in the Town of Guilderland are denied the fair, enfranchising, legal means to place a candidate on the general election ballot that those candidates and voters enrolled in the other political parties enjoy.

98.     Accordingly, defendants GDC and CRAWFORD have violated plaintiffs' rights under the United States Constitution.

**AS AND FOR A FOURTH CAUSE OF ACTION**

99.     Plaintiffs repeat and reallege paragraphs 1 through 98 as if more fully set forth at length herein.

100.    N.Y. Election Law § 6-108 provides the statutory authority to conduct a caucus.

101.    While the majority of the N.Y. Election Law provides discrete protections as to primary elections, none of these apply to caucuses.

102.    By allowing one party to select the caucus system, while affording voters and candidates in the other parties the full protections of the Election Law, N.Y. Election Law § 6-108 violates the Equal Protection Clause.

## AS AND FOR A FIFTH CAUSE OF ACTION

103.    Plaintiffs repeat and reallege paragraphs 1 through 102 as if more fully set forth at length herein.

104.    Defendant ALBANY COUNTY BOARD OF ELECTIONS ("ACBOE"), and its two Commissioners, defendants CLYNE and BLEDI, named herein in their official capacities, constitute an arm of the government of the County of Albany. The New York Election Law mandates that certificates of candidate nomination resulting from a town caucus be filed with the ACBOE, and that the ACBOE place the candidate nominated at that caucus on the next general election ballot.

105.    When a county and/or town political committee employs the caucus method in accordance with the Election Law to select its candidate for the general election, that method is the only means by which an individual can appear as that party's candidate on the general election ballot.

106.    As such, pursuant to the authority vested in it by the Election Law and the Rules of the ACDC, the GDC's caucus will be the sole means by which a candidate will appear in the Democratic Party's column on the ballot.

107.    Thus, pursuant to the authority vested in it by the Election Law and the Rules of the ACDC, the GDC has exclusive control over the identity of the candidate that appears in the Democratic Party's column for Guilderland Town Justice on the ballot.

108.    In other words, the GDC, by way of its caucus procedure, has full, complete, and exclusive control over ballot access for any eligible Democrat seeking to run as a Democrat for the position of Guilderland Town Justice in the general election.

109.    Likewise, because of the enrollment disparity between the Democratic Party and the Republican Party in the Town of Guilderland, the Democratic nominee will, in all likelihood, be elected to the Town Justice office in the general election.

110.    Thus, in effect, the GDC is making a de facto appointment of a public official with no meaningful input from the electorate.

111.    Therefore, the unlawful means by which GDC and CRAWFORD, with the aid, consent, and acquiescence of ACDC and FLYNN, are attempting to subvert the elective process directly affects the identity of those candidates found on the general election ballot.

112.    In light of all of the foregoing, defendants GDC, CRAWFORD, ACDC, and FLYNN are acting under color of state law.

113.    Thus, plaintiffs are entitled to damages and injunctive relief pursuant to 42 U.S.C. § 1983 because of defendants GDC, CRAWFORD, ACDC, and FLYNN's blatant violation of plaintiffs' rights under the United States Constitution and federal law as articulated herein.

114.    Plaintiffs are further entitled to their reasonable attorneys' fees, costs, and disbursements pursuant to 42 U.S.C. § 1988 against defendants GDC, CRAWFORD, ACDC, and FLYNN.

## AS AND FOR A SIXTH CAUSE OF ACTION

115.    Plaintiffs repeat and reallege paragraphs 1 through 114 as if more fully set forth at length herein.

116.    The New York State Human Rights Law (N.Y. Executive Law § 290, et seq.) ("NYSHRL"), prohibits discrimination with respect to places of "public accommodation, resort, or amusement" on the basis of, inter alia, "disability . . . of any person," including, inter alia, by the "refusal to make reasonable modifications in policies, practices, or procedures." N.Y. Executive Law §§ 296(2)(a) and (2)(c)(i).

117.    The NYSHRL defines places of "public accommodation, resort, or amusement" as including, inter alia, "recreation parks" and "any public areas of any building or structure." N.Y. Executive Law § 292(9).

118.    The above conduct violates E. NAPIERSKI's rights under the NYSHRL.

**WHEREFORE**, plaintiffs CHRISTINE M. NAPIERSKI and EUGENE E. NAPIERSKI demand judgment as follows:

(a)     Declaring that N.Y. Election Law § 6-108 is in violation of the United States Constitution as applied to plaintiffs;

(b)     Granting a permanent injunction prohibiting the GDC from using a caucus to select its candidates for town offices, which presently include defendants CLENAHAN and WIER, until and unless such caucus comports with the ADA, the NYSHRL, and the First, Fourteenth, and Twenty-Fourth Amendments to the United States Constitution;

(c)     Granting a permanent injunction prohibiting the ACBOE, CLYNE, and BLEDI from certifying the Democratic candidates for Town Justice and Town Highway Superintendent, and therefore from placing such candidates on the general election ballot, until such time as the GDC's caucus is deemed to have substantially complied with the ADA, the NYSHRL, and the United States Constitution, and plaintiffs' rights under the Fourteenth Amendment;

(d)     Requiring the GDC to conduct its caucus in a manner that satisfies the Equal Protection Clause of the Fourteenth Amendment, including the use of multiple caucus locations around the Town of Guilderland, each of which complies with the ADA and the NYSHRL, none of which requires a fee to access the location, and each of which employs protections delineated in the N.Y. Election Law to ensure fairness, and prevent fraud, mistake, and coercion of voters, including the use of paper ballots or some other method that ensures the integrity of the vote;

(e)     Awarding damages against GDC, CRAWFORD, ACDC, and FLYNN;

(f)     Awarding reasonable attorney's fees against GDC, CRAWFORD, ACDC, and FLYNN pursuant to 42 U.S.C. § 1988; and

(g)     Such other and further relief as this Court deems just, equitable, and appropriate.

DATED:  Albany, New York          NAPIERSKI, VANDENBURGH,
       July 18, 2018          NAPIERSKI & O'CONNOR, LLP

                   By:    s/ Andrew S. Holland
                         ANDREW S. HOLLAND
                         *Attorneys for Plaintiffs*
                         296 Washington Ave. Ext., Suite 3
                         Albany, New York 12203
                         (518) 862-9292