UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

CHRISTINE M. NAPIERSKI, an aggrieved candidate
for public office in the Democratic Party, and
EUGENE E. NAPIERSKI, an enrolled voter of the          **CIVIL ACTION**
Democratic Party residing in the Town of
Guilderland, New York,

                          Plaintiffs,

         -against-

THE GUILDERLAND DEMOCRATIC COMMITTEE,
THE ALBANY COUNTY DEMOCRATIC                     Case No. 1:18-cv-846 (MAD/DJS)
COMMITTEE, JACOB CRAWFORD, individually
and as Chairman or Acting Chairman, Guilderland
Democratic Committee, JACK FLYNN, individually
and as Chairman, Albany County Democratic
Committee, ALBANY COUNTY BOARD OF
ELECTIONS, MATTHEW J. CLYNE, in his official
capacity as Commissioner, Albany County Board
of Elections, RACHEL L. BLEDI, in her official
capacity as Commissioner, Albany County Board
of Elections, BRYAN M. CLENAHAN, Candidate
for Guilderland Town Justice, and GREGORY J.
WIER, Candidate for Guilderland Town Highway
Superintendent,

                          Defendants.

## MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION AND TEMPORARY RESTRAINING ORDER

                          Respectfully submitted,

                          NAPIERSKI, VANDENBURGH,
                          NAPIERSKI & O'CONNOR, LLP
                          *Attorneys for Plaintiffs*
                          296 Washington Ave. Ext., Suite 3
                          Albany, New York 12203
                          (518) 862-9292

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ........................................................................... 1

THE FACTS ................................................................................................... 1

ARGUMENT.................................................................................................... 2
POINT ONE
      PLAINTIFFS HAVE DEMONSTRATED PROCEDURAL
      ENTITLEMENT TO A PRELIMINARY INJUNCTION, AS
      WELL AS A TEMPORARY RESTRAINING ORDER........................................... 2

A.    Plaintiffs demonstrate irreparable harm................................................ 2

B.    Granting the preliminary injunction and temporary restraining
      order would be in the public interest ...................................................... 4

POINT TWO
      PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS ............................. 6

A.    Defendants GDC, Crawford, ACDC, and Flynn, are acting under
      color of state law................................................................................ 6

B.    The GDC caucus violates the Americans With Disabilities Act............................. 8

C.    Entry to the Tawasentha Park places an undue burden on voters
      or, alternatively, effectively imposes a poll tax...................................... 10

D.    The GDC Caucus violates the Equal Protection Clause of the
      Fourteenth Amendment...................................................................... 12

E.    N.Y. Election Law § 6-108 is unconstitutional as applied to plaintiffs ................. 15

CONCLUSION ................................................................................................. 18

i

## TABLE OF AUTHORITIES

Anderson v. Celebrezze, 460 U.S. 780 (1983) ............................................................ 16

Burdick v. Takushi, 504 U.S. 428 (1992) ............................................................. 16, 17

Common Cause Indiana v. Marion County Election Board, ___ F.Supp.3d ___,
    2018 WL 1940300 (S.D.Ind. 2018) ....................................................... 13

Cook v. Gralike, 513 U.S. 510 (2001) ............................................................ 14

Disabled in Action v. Board of Elections in City of New York, 752 F.3d 189
    (2d Cir. 2014) ........................................................................... 9

Dunn v. Blumstein, 405 U.S. 330 (1972) ........................................................ 17

Elrod v. Burns, 427 U.S. 347 (1976) .............................................................. 2

Faiveley Transp. Malmo AB v. Wabtec Corp., 559 F.3d 110 (2d Cir. 2009) ................... 2

F.C.C. v. Beach Communications, Inc., 508 U.S. 307 (1993) ............................... 16

Flagg Bros., Inc. v. Brooks, 436 U.S. 149 (1978) .......................................... 7

Frankling v. Gwinnett County Pub. Schs., 503 U.S. 60 (1992) ............................. 9

Gilmore v. Schenectady County Sheriffs, 9:17-CV-1349(DNH/TWD),
    2018 WL 794579 (N.D.N.Y. Feb. 8, 2018) ............................................... 3

Harper v. Virginia State Bd. of Elections, 383 U.S. 663 (1966) .................. 11, 13, 16

Heller v. Doe by Doe, 509 U.S. 312 (1993) .................................................. 16

Hoblock v. Albany County Bd. of Elections, 422 F.3d 77 (2d Cir. 2005) ................... 2

Hogan v. A.O. Fox Memorial Hosp., 346 Fed.Appx. 627 (2d Cir. 2009) ..................... 6

Illinois State Bd. of Elections v. Socialist Workers Party, 440 U.S. 173 (1979) ....... 12, 14

Jenness v. Fortson, 403 U.S. 431 (1971) ..................................................... 13

Kusper v. Pontikes, 414 U.S. 51 (1973) ...................................................... 13

League of Women Voters of United States v. Newby, 838 F.3d 1 (D.C. Cir. 2016) ........ 4

Lehnhausen v. Lake Shore Auto Parts, 410 U.S. 356 (1973) ............................... 16

Libertarian Party of Maine v. Diamond, 992 F.2d 365 (1st Cir. 1993) ........................... 13

Libertarian Party of North Dakota v. Jaeger, 659 F.3d 687 (8th Cir. 2011) ................... 13

Mitchell v. Cuomo, 748 F.2d 804 (2d Cir. 1984)................................................................. 2

Morse v. Republican Party of Virginia 517 U.S. 186 (1996) ............................................ 7

New York State Bd. of Elections v. Lopez Torres, 552 U.S. 196 (2008) ...................... 15

North Am. Soccer League v. U.S. Soccer Fed'n, 883 F.3d 32 (2d Cir. 2018) ................ 2

Price v. New York State Bd. of Elections, 540 F.3d 101 (2d Cir. 2008)................... 16, 17

Reynolds v. Sims, 377 U.S. 533 (1964) ........................................................................ 16

Rodriguez v. Popular Democratic Party, 457 U.S. 1 (1982) .......................................... 17

Seergy v. Kings County Republican Committee, 459 F.2d 308 (2d Cir. 1972)............... 8

Shapiro v. Cadman Towers, Inc., 51 F.3d 328 (2d Cir. 1995) ........................................ 2

Smith v. Allwright, 321 U.S. 649 (1944)........................................................................... 7

Southwest Voter Registration Educ. Project v. Shelley, 344 F.3d 914
     (9th Cir. 2003)............................................................................................................ 5

Terry v. Adams, 345 U.S. 461 (1953)............................................................................... 7

Timmons v. Twin Cities Area New Party, 520 U.S. 351 (1997) ..................................... 17

Tucker v. U.S. Dept. of Commerce 958 F.2d 1411 (7th Cir. 1992) ............................... 11

U.S. v. Charleston County, 318 F.Supp.2d 302 (D.S.C. 2002)........................................ 4

U.S. v. Classic, 313 U.S. 299 (1941)................................................................................ 7

Yick Wo v. Hopkins, 118 U.S. 356 (1886) ..................................................................... 12

Washington v. County of Rockland, 373 F.3d 310 (2d Cir. 2004) ................................... 6

## STATUTES, RULES, AND CONSTITUTIONAL PROVISIONS

42 U.S.C. § 12181.......................................................................................................... 9

42 U.S.C. § 12182(a) ................................................................................................... 9

Fed.R.Civ.P. 65 ........................................................................................................... 1

N.Y. Election Law § 4-104 ......................................................................................... 14

N.Y. Election Law § 5-601 ......................................................................................... 14

N.Y. Election Law § 6-108 ............................................................................ 1, 3, 5, 8, 13

U.S. Const., Amend XXIV, § 1 ................................................................................... 11

## PRELIMINARY STATEMENT

Plaintiffs CHRISTINE NAPIERSKI and EUGENE NAPIERSKI submit this Memorandum of Law in support of their motion (a) pursuant to Fed.R.Civ.P. 65(a) for a preliminary injunction prohibiting defendants THE GUILDERLAND DEMOCRATIC COMMITTEE ("GDC") and JACOB CRAWFORD from holding a caucus pursuant to N.Y. Election Law § 6-108 to elect the positions of Town Justice and Town Highway Superintendent, until such time as those defendants comply with the Americans With Disabilities Act of 1990 ("ADA"), the New York State Human Rights Law ("NYSHRL"), and the First, Fourteenth, and Twenty-Fourth Amendments of the United States Constitution; and (b) pursuant to Fed.R.Civ.P. 65(b) for a temporary restraining order pending the final determination of this motion.

## THE FACTS

The facts upon which this Memorandum of Law relies are found in the Complaint, the Declaration of Andrew S. Holland, the Affidavits of Christine Napierski, Eugene Napierski, and Christopher K. Dennis, and the Emergency Affidavit of Andrew S. Holland. For the sake of brevity and expeditiousness in light of the emergent nature of this application, plaintiffs respectfully refer the Court to those documents and to the Preliminary Statement of the Complaint for a recitation of the relevant facts.

**ARGUMENT**

**POINT ONE**

**PLAINTIFFS HAVE DEMONSTRATED PROCEDURAL ENTITLEMENT TO A PRELIMINARY INJUNCTION, AS WELL AS A TEMPORARY RESTRAINING ORDER.**

A party requesting a preliminary injunction must show "(1) irreparable harm; (2) either a likelihood of success on the merits or both serious questions on the merits and a balance of hardships decidedly favoring the moving party; and (3) that a preliminary injunction is in the public interest." <u>North Am. Soccer League v. U.S. Soccer Fed'n</u>, 883 F.3d 32, 37 (2d Cir. 2018).

**A.    Plaintiffs demonstrate irreparable harm.**

"The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." <u>Elrod v. Burns</u>, 427 U.S. 347 (1976) (<u>see also</u> <u>Mitchell v. Cuomo</u>, 748 F.2d 804, 806 [2d Cir. 1984] [quoting 11 C. Wright & A. Miller, <u>Federal Practice and Procedure</u> § 2948, at 440 (1973)]) ("When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is required"). If there is the danger that the winner of an election will be declared in contravention of the rights of plaintiff voters, then "the plaintiff voters will suffer 'an injury that is neither remote nor speculative, but actual and imminent and that cannot be remedied by an award of monetary damages.'" <u>Cf.</u> <u>Hoblock v. Albany County Bd. of Elections</u>, 422 F.3d 77, 97 (2d Cir. 2005) (quoting <u>Shapiro v. Cadman Towers, Inc.</u>, 51 F.3d 328, 332 [2d Cir. 1995]). "A showing of irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction." <u>Faiveley Transp. Malmo AB v. Wabtec Corp.</u>, 559 F.3d 110, 118 (2d Cir. 2009). In this Circuit, "[t]he same standards

used to review a request for a preliminary injunction govern consideration of an application for a temporary restraining order." <u>Gilmore v. Schenectady County Sheriffs</u>, 9:17-CV-1349 (DNH/TWD), 2018 WL 794579, *5 (N.D.N.Y. Feb. 8, 2018).

Here, there is no question that plaintiffs establish that they will be irreparably harmed if the Court denies a preliminary injunction. As stated, the GDC has announced that it will hold its caucus at a public park pavilion that holds approximately 200 people, many who will be members of the same committee who has organized the caucus and endorsed another candidate, as well as their families and guests. The supporting Affidavit of Christopher Dennis establishes to a reasonable degree of certainty that the Large Pavilion in the Tawasentha Park fails to comply with the ADA. The non-compliance with the ADA, renders plaintiff E. NAPIERSKI's attendance impossible. As E. NAPIERSKI has demonstrated that he is a voter eligible to vote in the caucus, the unlawful impediment to his attendance violates his right to vote, causing irreparable harm.

Moreover, both plaintiffs, C. NAPIERSKI as candidate, and E. NAPIERSKI as voter, have shown that their rights under the Fourteenth Amendment are violated insofar as the GDC caucus has the intended effect of suppressing voter turnout by means of secrecy and difficulties in voting. Because the alleged conduct directly and adversely impacts plaintiffs' voting-related First and Fourteenth Amendment rights, among the other grounds articulated in this action, they will be irreparably harmed if the caucus proceeds.

N.Y. Election Law § 6-108, and the Rules of the Albany County Democratic Committee, require notice of caucus to be posted at least ten days before the date of a scheduled caucus. After the caucus, the results of the vote are certified to the ACBOE for placement of the nominee on the general election ballot. The GDC's caucus has been

noticed to occur on July 26, 2018; once that date passes, then the relief sought in this action will be rendered moot. Thus, in order to prevent irreparable harm, plaintiffs urge the Court to maintain the status quo by preventing the caucus from occurring until the Court is satisfied that the GDC and CRAWFORD will conduct it lawfully.

**B.**  **Granting the preliminary injunction and temporary restraining order would be in the public interest.**

The third prong of the analysis—whether the injunction would be "in the public interest"—is met because the nature of the wrong sought to be remedied here is an alleged violation of a recognized public right. The rights underpinning this action are, in short, the fundamental right of the vote and the right to equal protection afforded by the Fourteenth Amendment, and are shared by all members of the Democratic Party in the Town of Guilderland. The violations asserted variably impinge upon the voting rights of disabled citizens, voters who will be absent on the day of the caucus, and all eligible town Democrats.

There is a strong public interest in protecting the fundamental right to vote. See League of Women Voters of United States v. Newby, 838 F.3d 1, 14 (D.C. Cir. 2016) (injunction favoring voter advocacy group plaintiff was supported by "strong public policy interest in ensuring that unlawful agency decisionmaking does not strip citizens of the right to vote"). While there is also a public interest in "having elections go forward and not impeding the power of local government to self-govern" (see U.S. v. Charleston County, 318 F.Supp.2d 302, 328 (D.S.C. 2002), that concern is either not implicated here or, at best, is significantly outweighed by the countervailing interest in protecting the rights of voters and candidates. First, the offending defendants, two political party committees and their chairmen, are not local governments. They are proceeding with a privately

4

organized[1] caucus that has the effect of performing a government function, and that is sanctioned broadly by statute and the ACBOE, an arm of the state. Thus, there is no local government whose operations would be affected by an injunction.

Alternatively, insofar as self-government would be affected by an injunction and restraining order, that affect would be tangential. Yes, the GDC's authority to hold a caucus is expressly granted by N.Y. Election Law § 6-108, and the intended result of the GDC is a certification to the ACBOE of the identity of a candidate for the general election. However, that is the end of the official sanction of the caucus. Nothing else about the GDC's caucus even resembles a statutorily regulated election; indeed, the disparity between the caucus and a primary election illustrates much of the underlying basis for this action. Similarly, postponing the caucus until a time that the GDC can comply with the law, and the constitutional infirmities can be remedied, has no effect on local government in the slightest. Unlike an actual primary election where the state spends significant sums of money that necessarily accompany a full election, the only expenses here are the small amounts borne by the GDC to rent a pavilion and post notices in a total of twelve locations and, indeed, the expenses pertaining to the caucus are statutorily paid by the party, not the State. See N.Y. Election Law § 6-108(3). Compare with Southwest Voter Registration Educ. Project v. Shelley, 344 F.3d 914, 919 (9th Cir. 2003) (denying injunction postponing statewide election where "enormous resources" were invested on various items incidental to a full election, and hundreds of thousands of absentee ballots had already been cast).

---

[1] Plaintiffs are not abandoning their claim that the GDC, ACDC, Crawford, and Flynn are state actors under the 42 U.S.C. § 1983 analysis. However, for purposes of the underlying interests that arguably would support the right to self-govern, these entities should not be treated as government entities in and of themselves since they do not function genuinely as governments.

Thus, here, the public interest analysis militates in plaintiffs' favor. The second prong of the preliminary injunction/temporary restraining order analysis, which is likelihood of success on the merits, is addressed, <u>infra</u>, in Point Two.

## POINT TWO

## PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS.

Plaintiffs have articulated multiple violations of their constitutional rights by defendants' use of the caucus to select the Democratic nominees for Town Justice and Town Highway Superintendent. Each will be addressed in turn.

## A.    Defendants GDC, Crawford, ACDC, and Flynn, are acting under color of state law.

As an initial matter, defendants GDC, Crawford, ACDC, and Flynn are liable to plaintiffs for any constitutional or statutory violations because under the circumstances here, they are acting under color of state law. "To establish a constitutional violation under § 1983, plaintiffs must demonstrate that (1) defendants were acting under color of state law . . . ; and (2) the action was a deprivation of a constitutional or federal statutory right." <u>Washington v. County of Rockland</u>, 373 F.3d 310, 315 (2d Cir. 2004). For this analysis, the conduct of private actors can be attributed to the state if "(1) the State compelled the conduct, (2) there is a sufficiently close nexus between the State and the private conduct, or (3) the private conduct consisted of activity that has traditionally been the exclusive prerogative of the State." <u>Hogan v. A.O. Fox Memorial Hosp.</u>, 346 Fed.Appx. 627, 629 (2d Cir. 2009).

While political parties, generally, are private organizations, whether or not they are subject to section 1983 liability depends on the nature of their activities that are the subject

of a suit. The Supreme Court has made it clear that "[w]hile the Constitution protects private rights of association and advocacy with regard to the election of public officials, our cases make it clear that the conduct of the elections themselves is an exclusively public function." Flagg Bros., Inc. v. Brooks, 436 U.S. 149, 158 (1978). A plurality of the Supreme Court has expressly held this standard to apply to political parties' activities designed to place their candidates on the general election ballot. In Morse v. Republican Party of Virginia, 517 U.S. 186 (1996), the plaintiffs had challenged a registration fee charged in connection with the party's convention called to nominate a candidate for United States Senator. Morse, 517 U.S. at 190. The Court found that the political party was a state actor because its convention was the means by which a candidate would appear on the general ballot as that party's nominee. Id.

The Court rejected arguments that a political party will only become a state actor if its nominee is virtually certain to win the general election, holding, "[v]oting at the nomination stage is protected regardless of whether it 'invariably, sometimes or never determines the ultimate choice of representation.'" Id. at 218 (quoting U.S. v. Classic, 313 U.S. 299, 318 (1941). More succinctly, the Morse Court observed, "[t]he operative test, as we have stated repeatedly, is whether a political party exercises power over the electoral process." Id. at 218. The holding in Morse dealt specifically with the preclearance requirements of section 5 of the Voting Rights Act, to be sure, and not specifically a section 1983 claim. However, the rationale for applying that statute to a political party applies equally to section 1983, since "any 'part of the machinery for choosing officials' becomes subject to the Constitution's restraints." Terry v. Adams, 345 U.S. 461, 481 (1953) (quoting Smith v. Allwright, 321 U.S. 649, 664 [1944]). See also Seergy v. Kings

County Republican Committee, 459 F.2d 308, 315 (2d Cir. 1972) (affirming invalidation of political party committee's rules as they apply to matters "integral to the electoral process" while reversing invalidation as to "internal party matters or on matters only indirectly relating to the selection of party nominees" [emphasis added]).

By the Supreme Court's reasoning, as recognized by the Second Circuit in Seergy, there can be no dispute that the GDC's caucus falls squarely within its function as "part of the machinery for choosing officials." As discussed, the Election Law permits a party to select its nominee by primary election or by caucus. See N.Y. Election Law § 6-108. The candidate selected at the caucus automatically—without further input from the voters, and without ever having had to file nominating petitions as would be required for a primary—becomes placed on the general election ballot. Thus, it is clear that the GDC's activities directly affect plaintiffs' constitutional rights. Further, the ACDC expressly permits the caucus by its own internal rules, and is alleged to have either contributed to, or turned a blind eye to, the GDC's unfairly conducted caucus. By all measures, the actions of the GDC, Crawford as its chairman, ACDC, and Flynn as its chairman, are acting under color of state law.

**B.      The GDC caucus violates the Americans With Disabilities Act.**

As articulated, the GDC caucus location violates the Americans With Disabilities Act of 1990 ("ADA") for various reasons. Plaintiffs submit the Affidavit of Mr. Dennis, who opines with reasonable engineering certainty that the Large Pavilion is not in compliance with the ADA because: (a) it has only one handicapped parking spot; (b) that parking spot fails to have the appropriate signage; (c) that parking spot fails to have appropriate buffers

to permit the use of wheelchair lifts; (d) and the bathrooms have non-compliant thresholds.

According to Title III of the ADA, "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). Where the ADA violation results in the restriction of an individual's right to vote, the Court can grant an injunction until such time as the violation is remedied. See Disabled in Action v. Board of Elections in City of New York, 752 F.3d 189, 198 (2d Cir. 2014). This is because the Court has the authority, absent clear direction to the contrary from Congress, "to award any appropriate relief in a cognizable cause of action brought pursuant to federal statute." Franklin v. Gwinnett County Pub. Schs., 503 U.S. 60, 70-71 (1992).

The Town of Guilderland rents the Large Pavilion for $150 per day. See "Pavilion Rentals", https://www.townofguilderland.org/parks-recreation/pages/pavilion-rentals (last visited July 17, 2018). A review of the GDC's campaign finance disclosure report for the July 2018 Periodic disclosure shows a payment made on May 30, 2018, to the Town of Guilderland for $150, with the explanation being given as "Caucus Pavilion Rental" (see Exhibit D). A "place of public accommodation" is defined to include both a "place of public gathering" and "a park, zoo, amusement park, or other place of recreation." 42 U.S.C. §§ 12181 (D) and (I). Thus, the GDC is a proper party for an ADA claim. Because the caucus will violate the provisions of the ADA, burdening the rights of voters, including E. NAPIERSKI, the GDC should be prevented from holding it until is complies with that law.

9

**C.      Entry to the Tawasentha Park places an undue burden on voters or, alternatively, effectively imposes a poll tax.**

The GDC and Crawford have selected a public park with an entry gate as the location of their caucus. The Tawasentha Park has a policy whereby vehicles owned by residents can enter the park provided they bear a resident park/transfer station sticker. These stickers are valid for two years, and can be obtained at the Town Parks and Recreation Office, Town Hall, or the Transfer Station. If the vehicle registration lists a physical address within the Town of Guilderland, then that document suffices as proof of residency; otherwise the resident must bring some other proof of residency. See "Town of Guilderland/Resident Park/Transfer Station Sticker"; https://www.townofguilderland.org/parks-recreation/pages/resident-parktransfer-station-sticker (last visited Jul. 17, 2018). While residents with a park sticker affixed to their vehicle may enter at no charge, non-residents must pay a ten-dollar fee per vehicle. See "Town of Guilderland/When is Tawasentha Park Open to the Public?"; https://www.townofguilderland.org/parks-recreation/faq/when-tawasentha-park-open-public (last visited Jul. 17, 2018).

While the point is not specifically articulated by the Town, the conclusion to be drawn is that those Town residents who drive vehicles not registered to an address in the Town, who use a non-resident's vehicle on the day of the caucus, who use a taxi, Uber, Lyft, etc., to travel to the caucus location, who are given a ride by a non-resident, who arrive at the caucus location unknowingly lacking proof of residency to apply for a resident sticker, or who simply do not wish to affix a park sticker to their vehicle, will have no choice

but to pay the ten-dollar fee to enter the park in order to vote at the caucus. This fee effectively amounts to a poll tax.

The Twenty-Fourth Amendment is explicit in forbidding the requirement of the payment of a "poll tax or any other tax" as a prerequisite to voting in a federal election. See U.S. Const., Amend XXIV, § 1. This proscription applies equally to state elections by virtue of the Fourteenth Amendment, as recognized in Harper v. Virginia State Bd. of Elections, 383 U.S. 663, 668 (1966).

Here, the GDC has selected a location that unquestionably requires the prospective voters to pass an attended gate, and either prove through a vehicle sticker that they are eligible to enter at no cost, or to pay a ten-dollar fee. This amounts to an unlawful imposition of a poll tax in violation of the Fourteenth Amendment. Further, even if, arguendo, there were some type of arrangement made whereby the entry fee and sticker requirements were waived for caucus attendees (there has been no indication that such an arrangement will be made), the existence of the prerequisites nevertheless stifles the vote by discouraging voters who are aware of the requirement, particularly since the notice of caucus says nothing about any fee waiver. See, e.g., Tucker v. U.S. Dept. of Commerce, 958 F.2d 1411, 1415 (7th Cir. 1992) (recognizing that poll taxes have the effect of "discourag[ing] voting").

Further, even though a resident voter can avoid the tax by obtaining a sticker, the caucus notice provides no warning to voters that they will need to satisfactorily prove residency to the Town's Parks and Recreation standards, as separate from those delineated in the Election Law. Further, the locations listed on the Town's webpage that provide stickers all close well before the caucus begins. The Parks and Recreation office

closes at 3:30 p.m. (see "Town of Guilderland/Parks & Recreation", https://www.townofguilderland.org/parks-recreation [last visited Jul. 17, 2018]); Town Hall closes at 4:30 p.m. (see "Town of Guilderland/Parks & Recreation", https://www.townofguilderland.org/about-town [last visited Jul. 17, 2018]); and the Transfer Station closes at 3:30 p.m. (see "Town of Guilderland/Transfer Station", https://www.townofguilderland.org/transfer-station [last visited Jul. 17, 2018]). Thus, if a voter arrives at the caucus location at or about the posted time of 6:00 p.m., he/she will be foreclosed from voting without paying the ten-dollar entry fee.

Thus, the entry fee has the precise effect as a poll tax: requiring the payment of a fee to enter the park where the caucus will be held. The alternative means of entry for those who lack a park sticker is foreclosed by virtue of the fact that the locations to obtain a park sticker all close well before the caucus. Plaintiff E. NAPIERSKI states that he does not possess a vehicle with a park sticker affixed. Thus, he would be disenfranchised if he were to attempt to attend caucus unless he paid the ten-dollar admission fee. E. NAPIERSKI's constitutional rights are therefore violated.

**D.    The GDC Caucus violates the Equal Protection Clause of the Fourteenth Amendment.**

As articulated in the Complaint, the GDC is the only political party within the Town of Guilderland that employs the caucus method. All other parties in Guilderland, and their voters, enjoy all of the protections incumbent with a primary election.

It is beyond cavil that the "political franchise of voting . . . is regarded as a fundamental political right, because [it is] preservative of all rights." Yick Wo v. Hopkins, 118 U.S. 356, 370 (1886); see also Illinois State Bd. of Elections v. Socialist Workers Party, 440 U.S. 173, 184 (1979) ("voting is of the most fundamental significance under

our constitutional structure"). Further, "[w]here ballot access restrictions fall unequally on similarly situated parties or candidates, the Fourteenth Amendment right to 'equal protection of the laws' may be threatened as well." Libertarian Party of Maine v. Diamond, 992 F.2d 365, 370 (1st Cir. 1993). Indeed, protective constitutional principles are not limited to general elections; voters are entitled to vote at primary elections as well without undue impingement upon their constitutional rights. See generally Kusper v. Pontikes, 414 U.S. 51 (1973).

While the right to vote in state elections is not expressly afforded in the U.S. Constitution, "it is enough to say that once the franchise is granted to the electorate, lines may not be drawn which are inconsistent with the Equal Protection Clause." Harper, 383 U.S. at 665. The Southern District of Indiana observed in Common Cause Indiana v. Marion County Election Board, ___ F.Supp.3d ___, 2018 WL 1940300 (S.D.Ind. 2018), a case involving constitutional challenges to procedures concerning early voting, that while there was no constitutional right to early voting, "it is hardly worth the ink to note that the Board could open neither polling places nor satellite offices only to white voters, or only to Green Party voters, or only to voters selected by sortes Vergilianae." Common Cause Indiana, at *12. Similarly, where the application of an otherwise neutral law disparately impacts two different parties, the Supreme Court has invalidated such a law. See Libertarian Party of North Dakota v. Jaeger, 659 F.3d 687, 702 (8th Cir. 2011) (citing Jenness v. Fortson, 403 U.S. 431 (1971).

The New York Election Law is surprisingly silent with respect to caucuses. N.Y. Election Law § 6-108(1) provides the framework by which a town political party with a population of less than 750,000 can opt to use the caucus method.

13

The GDC intends to take full advantage of the lack of statutory oversight when it holds its caucus. As discussed, the state legislature has gone to great lengths to ensure that the citizenry's right to vote is preserved. At a primary election, there are statutory provisions for poll watchers and inspectors, regulations concerning handling of paper ballots and ballot scanners before, during, and after the election, rules regarding how far a polling place can be from an individual election district (Guilderland is geographically divided into 30 different districts), provisions for absentee, military, and affidavit ballots, prohibitions against electioneering within a certain distance of a polling place. All other voters and candidates in the Town of Guilderland will enjoy these protections. By contrast, the GDC is using one location, with an access point requiring a fee or a resident sticker, that fails to accommodate the number of voters that one would anticipate for a primary election, that will already be substantially filled by committee members primed to vote for their endorsed candidate, that employs an internally determined means of voting, and that fails to provide adequate accommodations for handicapped voters. In fact, the failure to provide access to handicapped voters as discussed in sub-point B is further supporting of an Equal Protection violation because the Election Law requires that polling places (applicable to elections, not caucuses) comply with the ADA, and provide even further accommodations to the handicapped. See N.Y. Election Law §§ 4-104(1-a); 5-601. No such provisions apply to the use of a caucus.

There is no question that both C. NAPIERSKI as candidate, and E. NAPIERSKI as voter have standing to assert an Equal Protection claim, as both C. NAPIERSKI's right to associate to advance her political beliefs and E. NAPIERSKI's right to "cast [his] votes effectively" are constitutionally guaranteed. See Illinois State Bd. of Elections v. Socialist

Workers Party, 440 U.S. 173, 184 (1979); see also Cook v. Gralike, 513 U.S. 510, 531 (2001) (Rehnquist, J., concurring) (actions challenging ballot provisions are usually brought by candidate, and "no one questions" their standing to "raise a First Amendment challenge to such laws." [internal footnote omitted]).

The disparity between the Democratic caucus and the other Town parties' elections impinges on both plaintiffs' rights, because they prevent E. NAPIERSKI from exercising his fundamental right to vote, and they prevent those who would otherwise vote for C. NAPIERSKI from ever having a voice in the nomination of a candidate. Thus, the disparate impact requires the GDC to employ a method that protects its prospective candidates and its voters similarly to the other parties in the Town.

Defendants will likely rely upon New York State Bd. of Elections v. Lopez Torres, 552 U.S. 196 (2008). There, the Supreme Court upheld the state's use of nominating conventions attended by delegates for the purpose of nominating candidates for New York State Supreme Court, and in so doing, it rejected arguments that that method of selecting nominees gave too much power to party insiders, effectively preventing insurgent candidates from realistically obtaining office. Lopez Torres, 552 U.S. at 204-06. However, the specific concern here is the disparity between the GDC's use of the caucus, and the fact that the other Town parties use a primary, not the overall use of a caucus system.

**E.     N.Y. Election Law § 6-108 is unconstitutional as applied to plaintiffs.**

It is clear that the GDC is abusing the lack of statutory oversight of caucuses to suppress the vote and ensure that its endorsed candidates are nominated. For the foregoing reasons, the Court should prohibit the caucus from proceeding. However,

alternatively, to the extent that the Election Law <u>allows</u> such abuse to occur in the caucus process, and more importantly, allows different parties within the same jurisdiction to decide whether or not to subject themselves to the public protections afforded by the Election Law as applied to primary elections. This disparity renders that law unconstitutional as applied to plaintiffs.

"[W]here fundamental rights and liberties are asserted under the Equal Protection Clause, classifications which might invade or restrain them must be closely scrutinized and carefully confined." <u>Harper v Virginia State Bd. of Elections</u>, 383 U.S. 663, 670 (1966). "The right to vote freely for the candidate of one's choice is of the essence of a democratic society, and any restrictions on that right strike at the heart of representative government. And the right of suffrage can be denied by a debasement or dilution of the weight of a citizen's vote just as effectively as by wholly prohibiting the free exercise of the franchise." <u>Reynolds v Sims</u>, 377 U.S. 533, 555 (1964).

The Second Circuit has recognized a "flexible standard" as articulated in <u>Burdick v. Takushi</u>, 504 U.S. 428, 434 (1992), for determining which standard of review applies in Equal Protection challenges to election-related legislation. <u>See</u> <u>Price v. New York State Bd. of Elections</u>, 540 F.3d 101, 108-09 (2d Cir. 2008). The <u>Price</u> Court explains,

> Under <u>Burdick</u>'s "flexible standard," . . . the court must actually "weigh" the burdens imposed on the plaintiff against "the precise interests put forward by the State," and the court must take "into consideration the extent to which those interests make it necessary to burden the plaintiff's rights." <u>Id.</u> (quoting <u>Anderson v. Celebrezze</u>, 460 U.S. 780, 789[1983]). By contrast, under rational basis review, the plaintiff must "negative every conceivable basis which might support" the challenged law, <u>F.C.C. v. Beach Communications, Inc.</u>, 508 U.S. 307, 315 (1993) (quoting <u>Lehnhausen v. Lake Shore Auto Parts</u>, 410 U.S. 356 [1973]) (internal quotation marks omitted), even if some of those bases have absolutely no foundation in the record, <u>Heller v. Doe by Doe</u>, 509 U.S. 312, 320–21 (1993).

The standards for review are clear. If the plaintiffs' rights are severely burdened, the statute is subject to strict scrutiny. Burdick, 504 U.S. at 435. If the burden is minor, but non-trivial, Burdick's balancing test is applied. Under this balancing test, the State's reasonable and nondiscriminatory restrictions will generally be sufficient to uphold the statute if they serve important state interests. Id. Review in such circumstances will be quite deferential, and we will not require "elaborate, empirical verification of the weightiness of the State's asserted justifications." Timmons v. Twin Cities Area New Party, 520 U.S. 351, 364 (1997). Nonetheless, in cases like this one where the burden imposed by the law is non-trivial, we must weigh the State's justification against the burden imposed. See Burdick, 504 U.S. at 439; see also Timmons, 520 U.S. at 364.

Price, 540 F.3d at 108–09 (short citations expanded as applicable).

Plaintiffs respectfully ask the Court to apply strict scrutiny. There can be no question that the caucus method provides almost no protections to the voter, and reality that is all the more stark when compared with the litany of rights afforded a primary election voter. Insofar as the Election Law affords similarly-situated Republican voters immensely protected franchise, allowing a party to unilaterally select to heavily restrict its own party's voters amounts to a significant burden on those voters' rights.

What places section 6-108 in a uniquely invalid position is not necessarily the fact that caucus are permitted or contemplated but, rather, the differentiation in the protections afforded. This squarely implicates the Equal Protection Clause. The Supreme Court has made clear that "[w]hen a state or the Commonwealth of Puerto Rico has provided that its representatives by elected, 'a citizen has a constitutionally protected right to participate in elections on any equal basis with other citizens in the jurisdiction.'" Rodriguez v. Popular Democratic Party, 457 U.S. 1, 10 (1982) (quoting Dunn v. Blumstein, 405 U.S. 330, 336 [1972]) (emphasis added).

Because section 6-108 allows certain parties to skirt the regulatory protections of the Election Law while others enjoy them, the Equal Protection Clause is implicated, and

17

strict scrutiny analysis should be applied. Therefore, Election Law § 6-108 should be declared unconstitutional as applied to plaintiffs.

## **CONCLUSION**

For the foregoing reasons, plaintiffs respectfully ask this Court to grant their motion in all respects, and to preliminarily enjoin defendants GDC, CRAWFORD, ACDC, and FLYNN from holding a Guilderland Town caucus on July 26, 2018, to preliminarily enjoin defendants ACBOE, CLYNE, and BLEDI from taking any action with respect to any results certified by the GDC from the Town Caucus, and to grant a temporary restraining order providing such relief pending final determination of this motion.

DATED: Albany, New York
      July 18, 2018

Respectfully Submitted,

NAPIERSKI, VANDENBURGH,
NAPIERSKI & O'CONNOR, LLP

By:   s/ Andrew S. Holland
     ANDREW S. HOLLAND
     *Attorneys for Plaintiffs*
     296 Washington Ave. Ext., Suite 3
     Albany, New York 12203
     (518) 862-9292