UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

| | |
|---|---|
| CHRISTINE M. NAPIERSKI, an aggrieved candidate for public office in the Democratic Party, and EUGENE E. NAPIERSKI, an enrolled voter of the Democratic Party residing in the Town of Guilderland,<br><br>                              Plaintiffs,<br>                vs.<br>THE GUILDERLAND DEMOCRATIC COMMITTEE, THE ALBANY COUNTY DEMOCRATIC COMMITTEE, JACOB CRAWFORD, Individually and as Chairman or Acting Chairman, Guilderland Democratic Committee, JACK FLYNN, individually and as Chairman or Acting Chairman, Albany County Democratic Committee, ALBANY COUNTY BOARD OF ELECTIONS, MATTHEW J. CLYNE, in his official capacity as Commissioner, Albany County Board of Elections, RACHEL L. BLEDI, in her official capacity as Commissioner, Albany County Board of Elections, BRYAN M. CLENAHAN, Candidate for Guilderland Town Justice, and GREGORY J. WIER, Candidate for Guilderland Town Highway Superintendent.<br><br>                              Defendants. | **DEFENDANT GREGORY J. WIER'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' REQUEST FOR INJUNCTIVE RELIEF**<br><br>Case 1:18-cv-00846<br><br>MAD/DJS |

_____

## **PRELIMINARY STATEMENT**

Prior to filing this Federal action, it was incumbent upon plaintiffs to first contact the Town of Guilderland (not a party to this action) to discuss their concerns about the use of Tawasentha Park's large pavilion for the noticed caucus of enrolled Guilderland Democratic voters. Plaintiffs took the same "no contact" approach, when, in seeking a restraining order by this Court barring the caucus, they again obdurately failed to notify

defendants of this application as required by Local Rule 7.1(e). At that time, and at any time over the past several months, plaintiffs, one of whom is a Town employee, could have kindly inquired and would have learned that the Town does not charge a park entrance fee after 5:00pm on weekdays, and that the Town uses temporary measures for events with potential large crowds, such as placing an additional handicapped bathroom, placing signs for additional handicapped parking spaces, arranging for traffic control by the Guilderland Town Police, and providing additional patron parking. Put simply, plaintiffs' action and this belated request for injunctive relief were ill-advised.

Beyond these fundamental failures, plaintiffs' application for injunctive relief seeks to prohibit defendant Guilderland Democratic Party's statutory right to determine the method for selecting its candidates for Town Justice and Town Highway Superintendent. And while plaintiffs blindly focus on what they desire, they ignore the rights of defendant Gregory Wier who has relied upon the caucus method in his election campaign for Town Highway Superintendent. As such, far from the required showing that the balance of hardships is decidedly in favor of plaintiff, the facts show the opposite and that defendant Wier will be harmed by this very delayed and unjustified request to upset this upcoming Thursday caucus.

## STATEMENT OF FACTS

For purposes of the motion to dismiss, defendant Gregory Wier assumes, as true, the allegations in the complaint. For the Court's convenience, the following are the relevant facts.

2

(1) NYS Election Law §6-108(1) allows political parties to nominate its candidates for local office by either primary election or caucus. Defendant GDC's rules provide for a caucus.

(2) NYS Election Law §6-108(1) provides that a change in the method for selecting local candidates requires a 2/3rds vote of defendant GDC's members at least four months before the State primary election.

(3) In 2018, the State primary election is September 13, 2018. Pursuant to NYS Election Law §6-108(1), any change in defendant GDC's rules to require a primary election on that date was required on or before May 13, 2018.

(4) Defendant GDC has posted notice that it is holding its caucus on Thursday, July 26, 2018 at 6:00pm at Tawasentha Park, a public park owned by the Town of Guilderland. See Comp. ¶31.

(5) The Town does not charge a fee for entering Tawasentha Park after 5pm on weekdays. There is a booth, not a gate, and is only staffed when there is anticipated heavy daytime use of the pool. On every Thursday evening in July and August, the Guilderland Performing Arts Center hosts free concerts at 7:30pm without regard to Town residency. See Wier Aff. ¶6. There will be no park entrance fee for defendant GDC's caucus noticed for this Thursday evening at 6:00pm. See id.

(6). Tawasentha has hosted large participatory events, including the annual National Night Out and recent Hometown Heroes Banner Program and Moving Vietnam

3

War Memorial which attract thousands of patrons with no parking issues.  See Wier Aff. ¶10.

     (7).    To manage large crowds, the Town has employed temporary measures for anticipated large crowds, and will do so for this Thursday's caucus.  These measures include:

       a.    The Town has added signs for two second handicapped parking spaces and will on Thursday morning places cones for discharging wheelchair patron.  See Wier Aff. ¶15 & Exh. "C."

       b.    The Town will install a sandwich board at the large pavilion's parking lot entrance which restricts usage of the lots to vehicles with handicapped stickers or drop offs.  See Wier Aff. ¶15 & Exh. "D."

       c.    The Town reserves the 30 car parking lot immediately adjacent to the large pavilion for handicapped persons and drop offs;

       d.    The Park has 530 parking spaces, including 300 parking spaces within 500 feet of the large pavilion.

       e.    The Park's existing bathrooms are ADA-compliant with wheelchair accessible stall, grab bars, and lowered sinks for access by impaired persons.  See Wier Aff. ¶15 & Exh. "E."

       e.    The Town will install an additional temporary ADA-complaint bathroom before the caucus.  See Wier Aff. ¶15 & Exh. "F."

       f.    The Town will allow defendant GDC, at its cost, to install tents adjacent to the large pavilion; and

       g.    Town Police have been notified to direct traffic into the Park, and work with volunteers to direct patrons to additional parking spaces.

See Wier Aff. ¶15.

(8).    Plaintiffs have not contacted the Town to raise any concerns or issues about the proposed use of the Park's large pavilion by defendant GDC for its caucus.  See Wier Aff. ¶16.  The current Town Parks Supervisor and defendant Wier would consider other reasonable accommodations offered by plaintiffs.  See id.

(9).    Defendant Gregory J. Wier has declared his candidacy for the position of Town Highway Superintendent.  See Comp. 19.

## ARGUMENT

### POINT I

**PLAINTIFFS FAILED TO MEET THEIR BURDEN OF PROOF ON ANY OF THE REQUIREMENTS FOR INJUNCTIVE RELIEF**

In seeking a preliminary injunction, plaintiffs bear the heavy burden of proving "(1) irreparable harm; (2) either a likelihood of success on the merits or both serious questions on the merits and a balance of hardships decidedly favoring the moving party; and (3) that a preliminary injunction is in the public interest." North Am. Soccer League v. U.S. Soccer Fed'n, 883 F.3d 32, 37 (2nd Cir. 2018).  Inasmuch as plaintiffs are seeking to enjoin a noticed election process that would "change the position of the parties as [they] existed prior to the grant" of the injunction, the nature of the request is mandatory injunctive relief which imposes a heightened standard of "clear" or "substantial" likelihood of success on plaintiffs.  See Beal v. Stem, 184 F.3d 117, 122-23 (1999).

## POINT II

## PLAINTIFFS CANNOT PROVE A LIKELIHOOD OF SUCCESS ON THE MERITS OF ANY OF ITS CAUSE OF ACTION

As matter of law, the allegations of the complaint fail to sustain any of the six cause of action.

### A.   THE FIRST CAUSE OF ACTION FAILS TO STATE A VIOLATION OF THE AMERICANS WITH DISABILITIES ACT

Plaintiffs' First Cause of Action alleges that defendants will violate the rights of plaintiff Eugene Napierski, a disabled person, by holding the caucus at a location that allegedly does not meet the requirements of the Americans With Disabilities Act ("ADA"), 42 U.S.C. §12101 et seq.  See Comp. ¶63.  The underlying allegations are simply false but, even if assumed true, do not give rise to violation of the ADA by the named defendants.

First, Title II of the ADA, which prohibits discrimination against qualified individuals by public entities, defines "public entity" to include:

(1)   any State or local government;

(2)   any department, agency, special purpose district, or other instrumentality of a State or States or local government; and

(3)   the National Railroad Passenger Corporation, and any commuter authority.

See 42 U.S.C. §12131(1).

It cannot be applied, like here, against defendants who are private individuals or political parties.  Melton v. Orange County Democratic Party, 304 F.Supp2d 785 (M.D. N.C. 2003), aff'd 111 Fed. Appx. 707 (4th Cir. 2004).  The court relied upon the

6

Department of Justice's *The Americans with Disabilities Act: Title II Technical Assistance Manual* II-1.2000 (Nov.1993), which lists the following four factors to determine whether an organization is a "public entity" subject to ADA liability:

(1) Whether the entity is operated with public funds;

(2) Whether the entity's employees are considered government employees;

(3) Whether the entity receives significant assistance from the government by provision of property or equipment; and

(4) Whether the entity is governed by an independent board selected by members of a private organization or a board elected by the voters or appointed by elected officials.

Neither the complaint nor plaintiffs' memorandum of law addresses these factors. Here, the complaint correctly stated that defendant Jacob Crawford is defendant GDC's chairman, duly elected under NYS Election Law §2-112 which requires a vote of defendant GDC's members, and not by the public or even Democrats in the Town. And while the plaintiff accessed defendant GDC's financial filings for proof of renting the pavilion, the complaint does not contend that defendant GDC receives public funds or assistance, or has any employees. As a result, even under the most expansive interpretation of 42 U.S.C. §12131(1), defendants Crawford and GDC are not a "public entity" under the ADA.

Second, even assuming that defendants Crawford and GCD are public entities, plaintiffs' request for an injunction must be denied for failing to state a *prima facie* ADA claim. To prove a *prima facie* case, plaintiff Eugene Napierski must first show that

7

defendants failed to undertake some feasible measure to improve accessibility.  <u>United Spinal Ass'n v. Board of Elections in City of New York</u>, 882 F.Supp.2d 615 (SDNY 2012).  But even if plaintiffs make this preliminary *prima facie* showing of discrimination in violation of the ADA, they have the additional burden of "articulating reasonable accommodations that the defendant can make in order to comply with the ADA" <u>Id.</u> <u>quoting</u> <u>Kerrigan v. Philadelphia Board of Elections</u> (ED Pa. 2008), 2008 WL 3562521, at *10.  Plaintiffs must also show the existence of a plausible accommodation at Tawasentha and that the cost of the accommodation does not clearly exceed its benefits. <u>Id.</u>, <u>quoting Henrietta D v. Bloomberg</u>, 331 F.2d 261 (2nd Cir. 2003).

     Here, there was no *prima facie* showing that defendants failed to undertake a reasonable accommodation to improve accessibility.  Indeed, that is the essential flawed of plaintiffs' approach:  sue first, ask question later and seek an injunction, don't even bother to call.  Beyond those failures, neither the plaintiffs nor their architect recommended any reasonable accommodation.  Instead, they identify perceived problems but do not provide any cost estimates or worthy recommendations.   This basic failure to plead an ADA claim is fatal to the extraordinary request to enjoin a duly noticed and statutorily endorsed caucus.

     Plaintiffs' reliance upon <u>Disabled in Action v. Board of Elections in City of New York</u>, 752 F3d 189 (2nd Cir. 2014) is misplaced.  The District Court found "pervasive and recurring barriers" after two years of litigation and ordered a comprehensive remedial plan which the defendant Board of Elections neglected to implement.  <u>Id.</u> at 194.  In

8

sustaining the injunction, the Second Circuit emphasized that the District Court was required to "tailor [a] remedy to fit the nature and extent of the violation." Id. at 198 quoting Yonkers, 837 F.2d at 1235.

Third, even if plaintiffs had proposed a reasonable accommodation, they failed to name the Town of Guilderland, the Park's owner, as a necessary party.  See Westchester Disabled on the Move, Inc. v. County of Westchester, 346 F.Supp.2d 473 (S.D.N.Y. 2004) (an injunction for violation of the ADA requiring naming of municipalities who owned or operated polling places).   Here, defendant GDC is not an owner or operator of the Park.  The Complaint identifies the Park as a public park.  See Comp. ¶31.

Finally, even if plaintiffs had named the Town as a defendant, the Second Circuit has emphasized that any injunction against the Town should be exercised with "a proper respect for the integrity and function of local government institutions" consistent with principles of federalism.  Disabled in Action, 752 F3d at 198, quoting Jenkins, 495 U.S. at 51.  Most importantly, the Second Circuit reiterated that reasonable modifications do not include "any and all means" and that a public entity need not make structural changes to existing facilities when other methods effectively achieve compliance.  Id. at 197-198.

Here, without the need for a Federal action, let alone an injunction, the Town will enact the same temporary measures which have been successfully used for large attendance events.  These actions include:

    a.    The Town has already added an additional and signed handicapped parking space suggested by plaintiff.  The Town also will reserve the 30 car parking

      lot immediately adjacent to the large pavilion for handicapped persons and drop offs;

b.     The Town will place a sandwich board at the entrance to the large pavilion's parking lot which restrict usage to vehicles with handicapped stickers or drop offs;

c.     The Park has 530 parking spaces, including 300 parking spaces within 500 feet of the large pavilion.

d.     The Park's existing bathrooms are ADA-compliant with wheelchair accessible stalls, grab bars, and lowered sinks for access by impaired persons.

e.     The Town will install an additional temporary ADA-complaint bathroom a day or two before the scheduled event;

f.     The Town will allow defendant GDC, at its cost, to install a tent adjacent to the large pavilion; and

g.     Town Police has been notified to direct traffic into the Park, and will work with volunteers to direct patrons to additional parking spaces.

See Wier Aff. ¶15.

It bears emphasizing that, long before commencing this action or belatedly seeking this Court's intervention, plaintiffs, including a current Town Justice, could have called the Town Supervisor and/or Park's Director to discuss any concerns about its facilities. Plaintiffs' failure to pursue this simple approach provided the illusory basis for this needless litigation and unnecessary request for injunctive relief.

**B.    THE SECOND CAUSE OF ACTION FAILS TO SUPPORT A VIOLATION OF THE VOTING RIGHTS ACT**

Plaintiffs' Second Cause of Action invokes the Voting Rights Act by alleging that the Town will impose an illegal "poll tax" by alleging charging caucus attendees a fee to

enter the Park on the evening of the caucus.  See Comp. ¶s76-79.  Again, this assertion is not only baseless, it is offensive and insulting.

There will no fee to enter the Park for defendant GDC's caucus.  The entry booth is only operated on a limited basis when there is anticipated heavy usage of the Park's pool.  There is no charge for entry after 5:00pm.  There has never been fee charged for participating in prior caucuses or for the caucus noticed for Thursday, July 26th at 6:00pm.  And to allay any concerns, if caucus participants were to arrive hours early, the Town will not operate the booth and will not charge an entrance fee July 26th caucus.  See Wier Aff. ¶6.

### C.  THE THIRD CAUSE OF ACTION FAILS TO STATE A CLAIM FOR VIOLATION OF THE EQUAL PROTECTION CLAUSE

In the Third Cause of Action, plaintiffs allege that plaintiff Eugene Napierski's rights under the Equal Protection Clause of the Fourteenth Amendment will be violated by the use of a caucus instead of a primary election.  See Comp. ¶s 82-97.  These assertions fail as a matter of law.

First, pursuant to 28 U.S.C. §2403(b), the State's Attorney General must be placed on notice and given the opportunity to intervene where, as here, the action challenges the constitutionality of a State statute.  While this Court's text order dated July 19, 2018, notes plaintiffs' failure to provide notice of their request for a temporary restraining order to defendants as required by Local Law 7.1(e), it also appears that plaintiffs did not put this Court on notice of the complaint's challenge in the Third, Fourth and Fifth Causes of

Action to the constitutionality of NYS Election Law §6-108(1). Indeed, given the preponderance of plaintiffs' arguments that the caucus method is unconstitutional, it was incumbent upon them to have checked box 950 ("Constitutionality of State Statutes") on the Civil Cover Sheet or otherwise put the Court on notice.

Second, as plaintiffs recognize in the complaint, defendant GDC's rules adopted the use of a caucus in the selecting of its candidates as allowed by NYS Election Law §6-108(1). See Comp. ¶28. Pursuant to NYS Election Law §6-108(1), any change in this rule to allow a primary required a $2/3^{rd}$ vote of defendant GDC's members and had to be enacted at least four months prior to the State's primary. In 2018, the State's primary date is September 13, 2018, which required a rule change to a primary election on that date before May 13, 2018.

Third, nothing prevents either plaintiff Eugene Napierski from exercising his constitutional right as a voter or plaintiff Christine Napierski from exercising her constitutional rights as a candidate for public office. But in the end, the selection of the venue for exercising these rights is entrusted by the New York State to defendant GDC by NYS Election Law §6-108(1). See Tashjian v. Republican Party of Connecticut, 479 U.S. 208, 217 (1986) (holding that each state retains the power to regulate elections in their state).

### D.   THE FOURTH CAUSE OF ACTION THAT THE CAUCUS METHOD IS UNCONSTITUTIONAL IS WITHOUT MERIT

In the Fourth Cause of Action, plaintiffs allege that NYS Election Law §6-108(1) is unconstitutional because it allows for a caucus which they contend does not provide the "discrete protections" of a primary election.   For the reasons stated above, these allegations ring hollow.

First, there was no notification to the NYS Attorney General, as required by 28 U.S.C. §2403(b), of plaintiffs' contention that NYS Election Law §6-108(1) is unconstitutional.  Nor did plaintiffs avail themselves of the opportunity to timely seek a rule change to allow a primary election under NYS Election Law §6-108(1).

Second, while plaintiffs may prefer the alleged "discrete protections" of a primary, defendant GDC's use of the caucus method is a statutorily supported means of selecting its candidates.  Plaintiffs concede that the caucus method has few regulations.  Indeed, as outlined in NYS Election Law §6-108(3), the requirements for a caucus are simple, with only ten days prior public notice of the date, time, location, and purpose of the caucus; designating a chairman, secretary, and possible teller at the caucus; and allowing caucus participation by only enrolled party voters.  The caucus allows for nominations and allows direct interaction among enrolled party voters and prospective candidates.

In contrast, under the provisions of NYS Election Law for the primary elections is far more burdensome with strict requirements for obtaining the signatures of 5% of Democratic registered voters in the Town (that is about 460 signatures, if plaintiffs' claim

13

that the Town has approximately 9,200 enrolled Democratic voters, see Comp.¶32), see NYS Election Law §6-136; filing designating petitions by a deadline, see NYS Election Law §6-134(4); filing acceptance or declination designations by a fixed date; see NYS Election Law §6-158(2); and other statutory requirements. In the end, defendant GDC's made its choice of the caucus method and importantly plaintiffs knew of this choice. Plaintiffs' decision to seek nullification of this process on the eve of the caucus is ill-motivated.

### E. THE FIFTH CAUSE OF ACTION FOR ALLEGED VIOLATION OF 42 USC §1983 IS MERITLESS

In their Fifth Cause of Action, plaintiffs allege that use of the caucus method under NYS Election Law §6-108(1) violates 42 U.S.C. §1983 because it allegedly allows defendant GDC to make "a de facto appointment of a public official with no meaningful input from the electorate." See Comp. 104-113. Plaintiffs' argument is simply wrong.

First, as with the Third and Fourth Causes of Action, this attack on the constitutionality of NYS Election Law §6-108(1) requires notifying the NYS Attorney General under 28 U.S.C. §2403(b) of its right to intervene and defend the statute. And once again, plaintiffs did not timely obtain a change in defendant GDC's rules to allow for a primary election under NYS Election Law §6-108(1).

Second, as exhaustively discussed above, a caucus is one of the two methods allowed by NYS Election Law for candidates for public office. Moreover, plaintiffs offer no explanation for how a primary, with its petitioning requirements, would take place in

the next six weeks before the September 13th primary.  Nor would this abbreviated period allow for first determining who had successfully petitioned for the primary ballot and also provide eligible candidates with meaningful time to raise campaign funds, purchase campaign signs and literature, and, let alone, campaign for votes.

Third, plaintiffs' argument ignore defendant GDC's constitutional right to determine its method of selecting its candidates.  See Burdick v. Takushi, 504 U.S. 428, 433 (1992)("The rights of individuals to associate for political purposes" is "of the most fundamental significance under our constitutional structure");  Munro v. Socialist Workers Party, 479 U.S. 189, 193 (1986).  In NYS Board of Elections v. Lopez Torres, 552 U.S. 196 (2008), the Supreme Court held that political parties have a First Amendment to employ the candidate selection process which, in its opinion, will result in selecting a nominee who best represents its platform.  The Court held that New York's judicial convention method for nominating judicial candidates was a permissible method of candidate selection and was not analogous to ballot access regulations that unduly inhibit an "unsupported candidate" from vying for the party's nomination.

### F.   THE SIXTH CAUSE OF ACTION FAILS TO STATE A CLAIM FOR ALLEGED VIOLATION OF THE NYS HUMAN RIGHTS LAW

In the Sixth Cause of Action, plaintiffs reprise the same allegations used in support of its ADA claim to assert a related claim under the NYS Human Rights Law.   This recasting of these allegations is similarly flawed.

A claim for disability discrimination under NYS Human Rights Law (NYS Executive Law §290 et seq.) is governed by the same standards applicable to ADA claims. See Hartnett v. Fielding Graduate Institute, 400 F.Supp.3d 570, 581 (S.D.N.Y. 2005). Even assuming this State statute applies to defendants, plaintiffs have the burden of identifying specific "reasonable modifications" to address "discriminatory practices." See Roberts v. Royal Atlantic Corp., 445 F.Supp.2d 239 (E.D.N.Y. 2006). Plaintiffs must also show a "refusal" by defendants to undertake identified measures. But even if those requirements are shown, plaintiffs must also show that the measures are "readily achievable" and "without undue burden." See id.

Again, plaintiffs never communicated their concerns about the Park to the Town. As such, the required "refusal" is absent. Nor does plaintiff even attempt to show that the unidentified measures are "readily achievable" or "without undue burden." For these reasons, and for those stated above for the ADA claim, this cause of action fails as a matter of law.

### POINT III

### THE BALANCE OF HARDSHIP IS NOT DECIDELY IN FAVOR OF PLAINTIFFS

Plaintiffs also cannot meet their burden of showing that the balance of hardship is decidedly in their favor. In fact, and at law, the opposite is true.

There is simply no valid excuse or explanation for plaintiffs to seek Federal court intervention to bar a statutorily permitted local election process. Any perceived hardship

16

in participating in this open caucus process rests upon plaintiffs' false assumptions about an entrance fee or that the Town does not employ temporary measures so that all patrons have a full enjoyment and access to its facilities. Simply put, this "emergency motion" is a disservice to this Court.

More importantly, the enjoining of a noticed caucus inequitably impacts Democratic voters who intend to attend, participate, and cast votes for its Party's candidates for Town Highway Superintendent and Town Justice. As the complaint concedes, see Comp. ¶31, defendant GDC has provided the public with the statutorily required notice of this important caucus.

And almost as important, this flawed attempt to prohibit the noticed caucus is offensive to the rights of defendant Gregory Wier. Other than naming Mr. Wier in one paragraph of the complaint, see Comp. ¶19, as a defendant because he will be seeking the Democratic Party's endorsement for Town Highway Superintendent at the caucus, plaintiffs are utterly silent in their motion papers about the impact upon Mr. Wier's rights. Like any candidate for public office, Mr. Wier has relied upon the announced caucus method and devoted time and effort to ask enrolled Democrat voters to attend the caucus in support of his candidacy. See Wier Aff. ¶s 3-4. In sum, in balancing hardships, plaintiffs conveniently ignore the reasonable expectation and reliance by enrolled Democratic voters and Mr. Wier on a holding a properly notified Guilderland Democratic Party caucus on Thursday, July 26th at 6:00pm at Tawasentha Park.

## **CONCLUSION**

For these reasons, plaintiffs' request for injunctive relief should be denied its entirety.

Dated: July 23, 2018         By____*s/Peter G. Barber*_____
                                               Peter G. Barber, Esq.
                                               Bar Roll No. 301523
                                               Attorneys for Defendant Gregory J. Wier
                                               P.O. Box 1521
                                               Albany, New York, 12203
                                               Telephone:   518-369-3754