UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

CHRISTINE M. NAPIERSKI, an aggrieved
candidate for public office in the Democratic
Party; and EUGENE E. NAPIERSKI, an
enrolled voter of the Democratic Party residing
in the Town of Guilderland, New York,

      Plaintiffs,

v.                    1:18-CV-0846
                      (GTS/DJS)

THE GUILDERLAND DEMOCRATIC
COMMITTEE; THE ALBANY DEMOCRATIC
COMMITTEE; JACOB CRAWFORD, in His
Individual and Official Capacities; ALBANY
COUNTY BOARD OF ELECTIONS; MATTHEW J.
CLYNE, in His Official Capacity; JACK FLYNN,
in His Individual and Official Capacities; RACHEL L.
BLEDI, in Her Official Capacity; BRYAN M.
CLENAHAN; and GREGORY J. WIER,

      Defendants.
_____

APPEARANCES:               OF COUNSEL:

NAPIERSKI, VANDENBURGH, NAPIERSKI    ANDREW S. HOLLAND, ESQ.
& O'CONNOR, LLP
 Counsel for Plaintiffs
296 Washington Avenue Extension
Albany, New York 12203

FEENEY & CENTI, ATTORNEYS AT LAW     DANIEL J. CENTI, ESQ.
 Counsel for Defendants Crawford and
Guilderland Democratic Committee
116 Great Oaks Boulevard
Albany, New York 12203

LAW OFFICE OF TERESI & LITTLE, PLLC    WILLIAM T. LITTLE, ESQ.
 Counsel for Defendants Flynn and Albany
Democratic Committee
21 Colvin Avenue
Albany, New York 12206

| | |
|---|---|
| ALBANY COUNTY ATTORNEY'S OFFICE<br>  Counsel for Defendants Albany County Board<br>of Elections, Clyne, and Bledi<br>112 State Street<br>Albany, New York 12207 | TRACY A. MURPHY, ESQ. |
| OFFICE OF JAMES E. LONG<br>  Counsel for Defendant Clenahan<br>668 Central Avenue<br>Albany, New York 12206 | ALEJANDRA N. PAULINO, ESQ. |
| LAW OFFICES OF PETER G. BARBER<br>  Counsel for Defendant Wier<br>P.O. Box 1521<br>Guilderland, New York 12084 | PETER G. BARBER, ESQ. |

GLENN T. SUDDABY, Chief United States District Judge

## **DECISION and ORDER**

Currently pending before the Court is a voting rights action filed by Christine M. Napierski and Eugene E. Napierski ("Plaintiffs") against the Guilderland Democratic Committee, the Albany County Democratic Committee, Jacob Crawford (individually and in his capacity as Acting Chairman of the Guilderland Democratic Committee), the Albany County Board of Elections, Matthew J. Clyne (in his official capacity as Commissioner of the Albany County Board of Elections), Jack Flynn (individually and in his capacity as Chairman of the Albany County Democratic Committee), Rachel L. Bledi (in her official capacity as Commissioner of the Albany County Board of Elections), Bryan M. Clenahan (as a candidate for Guilderland Town Justice), and Gregory J. Wier (as a candidate for Guilderland Town Highway Superintendent) ("Defendants"). Pending in that action is Plaintiffs' motion for (a) an Order preliminarily enjoining Defendants Guilderland Democratic Committee, the Albany County Democratic Committee, Jacob Crawford, and Jack Flynn, pursuant to Fed. R. Civ. P. 65(a), from

2

holding a caucus pursuant to N.Y. Elec. L. § 6-108 to elect the positions of Town Justice and Town Highway Superintendent, until such time as Defendants comply with the Americans with Disabilities Act ("ADA"), the New York State Human Rights Law ("NYSHRL"), and the First, Fourteenth, and Twenty-Fourth Amendments of the United States Constitution, and (b) a temporary restraining order pursuant to Fed. R. Civ. P. 65(b) pending the final resolution of the current motion. (Dkt. No. 5 [Pls.' Mem. of Law].) Defendants opposed Plaintiffs' motion. (Dkt. Nos. 22, 24, 25.) For the reasons set forth below, Plaintiffs' motion for a preliminary injunction and temporary restraining order is denied.

I. **RELEVANT BACKGROUND**

A. **Plaintiffs' Claims**

Generally, liberally construed, Plaintiffs' Complaint alleges the following five claims: (1) Defendants' decision to hold their caucus at the Large Pavilion in Tawasentha Park violates the rights of Plaintiff E. Napierski and other disabled eligible voters in the Democratic party under the ADA because the Large Pavilion (a) does not have a sufficient number of handicapped parking spots, (b) does not have sufficiently textured surfaces to negotiate a scooter or wheelchair, (c) lacks accessible bathrooms, and (d) does not have grading or slopes meeting ADA standards; (2) Defendants' decision to hold their caucus at Tawasentha Park violates the Twenty-Fourth Amendment and the Voting Rights Act because there is a $10.00 fee to enter the park for any person who does not have a resident park sticker on their car, which essentially constitutes a poll tax; (3) Defendants' use of the caucus system as applied to Plaintiffs violates the Equal Protection Clause of the Fourteenth Amendment because it denies voters in the Democratic party in the Town of Guilderland from enjoying the same legal means of selecting a

3

candidate for a general election as used by other parties (who use the primary election system); (4) N.Y. Elec. L. § 6-108 violates the Equal Protection Clause by allowing one party to select the less-regulated caucus system while allowing other voters and candidates in other parties the ability to avail themselves of the full protections afforded by primary elections; and (5) Defendants Guilderland Democratic Committee, Crawford, Albany County Democratic Committee, and Flynn are acting under the color of state law for the purposes of 42 U.S.C. § 1983. (*See generally* Dkt. No. 1 [Pls.' Compl.].) Familiarity with the factual allegations supporting these claims in Plaintiffs' Complaint is assumed in this Memorandum-Decision and Order, which is intended primarily for review by the parties. (*Id*.)

### B. Plaintiffs' Motion

#### 1. Plaintiffs' Memorandum of Law

Generally, in support of their motion for preliminary injunction and a temporary restraining order, Plaintiffs argue the following three points: (1) Plaintiffs have demonstrated irreparable harm based on (a) ADA violations at the Large Pavilion and Tawasentha Park that make it difficult (if not impossible) for Plaintiff E. Napierski and other disabled voters to attend the caucus and (b) the inadequate capacity of the pavilion and the large number of committee members and their families who will take up space in the pavilion; (2) Plaintiffs have demonstrated that the preliminary injunction and temporary restraining order would be in the public interest because there is a strong public interest in protecting the fundamental right to vote that is not outweighed by any concerns about interfering with efficient self-government or costs associated with the caucus (which are minimal); and (3) Plaintiffs have shown that they are likely to succeed on the merits of their claims. (*See generally* Dkt. No. 5, Attach. 9 [Pls.' Mem. of Law].)

### 2. Defendant Flynn's Opposition Memorandum of Law

Generally, in opposition to Plaintiffs' motion, Defendant Flynn argues the following four points: (1) Plaintiffs have failed to establish a likelihood of success on the merits on any of their claims; (2) Plaintiffs have failed to establish that the public interest will not be disserved by issuance of the requested injunction; (3) Plaintiffs have failed to name the Town of Guilderland in this action despite the fact they are a necessary party based on its ownership of Tawasentha Park; and (4) Defendants are not state actors for the purposes of determining liability under 28 U.S.C. § 1983. (Dkt. No. 22, Attach. 1, at 6-14 [Def. Flynn's Opp'n Mem. of Law].)

### 3. Defendant Wier's Opposition Memorandum of Law

Generally, in opposition to Plaintiffs' motion, Defendant Wier argues the following two points: (1) Plaintiffs have failed to show a likelihood of success on the merits of any of their claim; and (2) the balance of hardships are not decidedly in Plaintiffs' favor, but rather granting the injunction would negatively impact the rights of voters who are already planning to attend the caucus and the other candidates who have been campaigning based on the specific caucus date, including Defendant Wier. (Dkt. No. 24, at 5-17 [Def. Wier's Opp'n Mem. of Law].)

### 4. Defendants Crawford and Guilderland Democratic Committee's Opposition Memorandum of Law

Generally, in opposition to Plaintiffs' motion, Defendants Crawford and Guilderland Democratic Committee argue that Plaintiffs have not (and cannot) show a likelihood of success on the merits or a balance of hardships decidedly in their favor because (a) Defendants are not "public entities" and therefore the ADA does not apply to them, (b) even if the ADA is applicable, Plaintiffs have not stated a *prima facie* case under the ADA because they did not "articulate reasonable accommodations that the defendant can make in order to comply with the

ADA," and (c) the use of a caucus is constitutional and Plaintiff C. Napierski is not being denied an equal opportunity to seek the party nomination simply because other parties use a primary election rather than a caucus. (Dkt. No. 25, at 3-8 [Defs. Crawford and Guilderland Democratic Comm.'s Opp'n Mem. of Law].)

### C. July 23, 2018, Hearing

On July 23, 2018, the Court held a hearing on Plaintiffs' motion, at which the following witnesses presented testimony: (1) Richard Akullian; (2) Plaintiff Christine Napierski; (3) Plaintiff Eugene Napierski; (4) Christopher Dennis; (5) Defendant Rachel Bledi; (6) Defendant Jacob Crawford; and (7) Defendant Gregory Wier. Plaintiffs also presented additional exhibits that were admitted into the record at the hearing. In addition, the Court granted a request that Defendant Wier's affidavit be admitted as hearing testimony. (*See generally* Text Minute Entry, 7/23/2018.)

## II. GOVERNING LEGAL STANDARD

"A preliminary injunction is an 'extraordinary and drastic remedy' . . . ; it is never awarded as of right . . . ." *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008) (internal citations omitted). Generally, in the Second Circuit, a party seeking a preliminary injunction must establish the following three elements: (1) that there is either (a) a likelihood of success on the merits and a balance of equities tipping in the party's favor or (b) a sufficiently serious question as to the merits of the case to make it a fair ground for litigation and a balance of hardships tipping decidedly in the party's favor; (2) that the party will likely experience irreparable harm if the preliminary injunction is not issued; and (3) that the public interest would not be disserved

by the relief.[1]  *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (reciting standard limited to first part of second above-stated element and using word "equities" without the word "decidedly"); *accord, Glossip v. Gross*, 135 S. Ct. 2726, 2736-37 (2015); *see also Am. Civil Liberties Union v. Clapper*, 785 F.3d 787, 825 (2d Cir. 2015) (reciting standard including second part of second above-stated element and using words "hardships" and "decidedly"); *Citigroup Global Markets, Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 38 (2d Cir. 2010) (holding that "our venerable standard for assessing a movant's probability of success on the merits remains valid [after the Supreme Court's decision in *Winter*]").

With regard to the first part of the first element, a "likelihood of success" requires a demonstration of a "better than fifty percent" probability of success. *Abdul Wali v. Coughlin*, 754 F.2d 1015, 1025 (2d Cir. 1985), *disapproved on other grounds, O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349, n.2 (1987). "A balance of equities tipping in favor of the party requesting a preliminary injunction" means a balance of the hardships against the benefits. *See, e.g., Ligon v. City of New York,* 925 F. Supp.2d 478, 539 (S.D.N.Y. 2013) (characterizing the balancing "hardship imposed on one party" and "benefit to the other" as a "balanc[ing] [of] the equities"); *Jones v. Nat'l Conference of Bar Examiners,* 801 F. Supp. 2d 270, 291 (D. Vt. 2011) (considering the harm to plaintiff and any "countervailing benefit" to plaintiff in balancing the equities); *Smithkline Beecham Consumer Healthcare, L.P. v. Watson Pharm., Inc.,* 99-CV-9214,

---

[1] The same standards used to review a request for a preliminary injunction govern consideration of an application for a temporary restraining order. *Walker v. Bellnier*, 17-CV-1008, 2017 WL 5135702, at *12 (N.D.N.Y. Nov. 3, 2017) (Suddaby, C.J.) (citing *Local 1814, Int'l Longshoremen's Ass'n, AFL-CIO v. New York Shipping Ass'n, Inc.*, 965 F.2d 1224, 1228 [2d Cir. 1992]; *Perri v. Bloomberg*, 06-CV-0403, 2008 WL 2944642, at *2 [E.D.N.Y. Jul. 31, 2008]); *Andino v. Fischer*, 555 F. Supp. 2d 418, 419 (S.D.N.Y. 2008).

1999 WL 34981557, at *4-5 (S.D.N.Y. Sept. 13, 1999) (considering the harm to defendant and the "benefit" to consumers in balancing the equities); *Arthur v. Assoc. Musicians of Greater New York*, 278 F. Supp. 400, 404 (S.D.N.Y. 1968) (characterizing "balancing the equities" as "requiring plaintiffs to show that the benefit to them if an injunction issues will outweigh the harm to other parties"); *Rosenstiel v. Rosenstiel*, 278 F. Supp. 794, 801-02 (S.D.N.Y.1967) (explaining that, in order to "balance the equities," the court "will consider the hardship to the plaintiff . . . , the benefit to [the] plaintiff . . . , and the relative hardship to which a defendant will be subjected") [internal quotation marks omitted].[2]

With regard to the second part of the first element, "[a] sufficiently serious question as to the merits of the case to make it a fair ground for litigation" means a question that is so "substantial, difficult and doubtful" as to require "a more deliberate investigation." *Hamilton Watch Co. v. Benrus Watch Co.*, 206 F.2d 738, 740 (2d Cir. 1953); *accord, Semmes Motors, Inc. v. Ford Motor Co.,* 429 F.2d 1197, 1205-06 (2d Cir. 1970).[3] "A balance of hardships tipping decidedly toward the party requesting a preliminary injunction" means that, as compared to the hardship suffered by other party if the preliminary injunction is granted, the hardship suffered by the moving party if the preliminary injunction is denied will be so much greater that it may be characterized as a "real hardship," such as being "driven out of business . . . before a trial could

---

[2] *See also Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 12, n.2 (7th Cir. 1992) ("Weighing the equities as a whole favors X, making preliminary relief appropriate, even though the *undiscounted* balance of harms favors Y.") [emphasis added].

[3] *See also Six Clinics Holding Corp., II v. Cafcomp Sys., Inc.*, 119 F.3d 393, 402 (6th Cir. 1997); *Rep. of the Philippines v. Marcos*, 862 F.2d 1355, 1362 (9th Cir. 1988); *City of Chanute v. Kansas Gas and Elec. Co.,* 754 F.2d 310, 314 (10th Cir. 1985); *R.R. Yardmasters of Am. v. Penn. R.R. Co.*, 224 F.2d 226, 229 (3d Cir. 1955).

be held." *Buffalo Courier-Express, Inc. v. Buffalo Evening News, Inc.*, 601 F.2d 48, 58 (2d Cir. 1979); *Int'l Bus. Mach. v. Johnson*, 629 F. Supp.2d 321, 333-34 (S.D.N.Y. 2009); *see also Semmes Motors, Inc.,* 429 F.2d at 1205 (concluding that the balance of hardships tipped decidedly in favor of the movant where it had demonstrated that, without an injunctive order, it would have been forced out of business as a Ford distributor).[4]

With regard to the second element, "irreparable harm" is "certain and imminent harm for which a monetary award does not adequately compensate." *Wisdom Import Sales Co. v. Labatt Brewing Co.*, 339 F.3d 101, 113 (2d Cir. 2003). Irreparable harm exists "where, but for the grant of equitable relief, there is a substantial chance that upon final resolution of the action the parties cannot be returned to the positions they previously occupied." *Brenntag Int'l Chem., Inc. v. Bank of India*, 175 F.3d 245, 249 (2d Cir. 1999).

With regard to the third element, the "public interest" is defined as "[t]he general welfare of the public that warrants recognition and protection," and/or "[s]omething in which the public as a whole has a stake[,] esp[ecially], an interest that justifies governmental regulation." *Black's Law Dictionary* at 1350 (9th ed. 2009).

---

[4] The Court notes that, under the Second Circuit's formulation of this standard, the requirement of a balance of *hardships* tipping *decidedly* in the movant's favor is added only to the second part of the first element (i.e., the existence of a sufficiently serious question as to the merits of the case to make it a fair ground for litigation), and not also to the first part of the first element (i.e., the existence of a likelihood of success on the merits), which (again) requires merely a balance of *equities* (i.e., hardships and benefits) tipping in the movant's favor. *See Citigroup Global Markets, Inc.*, 598 F.3d at 36 ("Because the moving party must not only show that there are 'serious questions' going to the merits, but must additionally establish that 'the balance of hardships tips decidedly' in its favor . . . , its overall burden is no lighter than the one it bears under the 'likelihood of success' standard.") (internal citation omitted); *cf. Golden Krust Patties, Inc. v. Bullock*, 957 F. Supp.2d 186, 192 (E.D.N.Y. 2013) ("[T]he *Winter* standard . . . requires the balance of equities to tip in the movant's favor, though not necessarily 'decidedly' so, even where the movant is found likely to succeed on the merits.").

9

The Second Circuit recognizes three limited exceptions to the above-stated general standard. *Citigroup Global Markets, Inc.*, 598 F.3d at 35, n.4.

First, where the moving party seeks to stay government action taken in the public interest pursuant to a statutory or regulatory scheme, the district court should not apply the less rigorous "serious questions" standard but should grant the injunction only if the moving party establishes, along with irreparable injury, a likelihood that he will succeed on the merits of his claim. *Id.* (citing *Able v. United States*, 44 F.3d 128, 131 [2d Cir. 1995]); *see also Otoe-Missouria Tribe of Indians v. New York State Dep't of Fin. Servs.*, 769 F.3d 105, 110 (2d Cir. 2014) ("A plaintiff cannot rely on the 'fair-ground-for-litigation' alternative to challenge governmental action taken in the public interest pursuant to a statutory or regulatory scheme.") (internal quotation marks omitted). This is because "governmental policies implemented through legislation or regulations developed through presumptively reasoned democratic processes are entitled to a higher degree of deference and should not be enjoined lightly." *Able,* 44 F.3d at 131.

Second, a heightened standard–requiring both a "clear or substantial" likelihood of success and a "strong" showing of irreparable harm"–is required when the requested injunction (1) would provide the movant with all the relief that is sought and (2) could not be undone by a judgment favorable to non-movant on the merits at trial. *Citigroup Global Markets, Inc.*, 598 F.3d at 35, n.4 (citing *Mastrovincenzo v. City of New York*, 435 F.3d 78, 90 [2d Cir. 2006]); *New York v. Actavis PLC*, 787 F.3d 638, 650 (2d Cir. 2015) ("When either condition is met, the movant must show [both] a 'clear' or 'substantial' likelihood of success on the merits . . . *and* make a 'strong showing" of irreparable harm' . . . .") (emphasis added).

Third, the above-described heightened standard may also be required when the preliminary injunction is "mandatory" in that it would "alter the status quo by commanding some positive act," as opposed to being "prohibitory" by seeking only to maintain the *status quo*. *Citigroup Global Markets, Inc.*, 598 F.3d at 35, n.4 (citing *Tom Doherty Assocs. v. Saban Entm't*, 60 F.3d 27, 34 [2d Cir. 1995]).[5] As for the point in time that serves as the *status quo*, the Second Circuit has defined this point in time as "the last actual, peaceable uncontested status which preceded the pending controversy." *LaRouche v. Kezer*, 20 F.3d 68, 74, n.7 (2d Cir. 1994); *accord, Mastrio v. Sebelius*, 768 F.3d 116, 120 (2d Cir. 2014); *Actavis PLC*, 787 F.3d at 650.

Because the parties have demonstrated in the memoranda of law an adequate understanding of this legal standard, the Court need not, and does not, further elaborate on this legal standard in this Decision and Order, which is intended primarily for the review of the parties.

## III. ANALYSIS

### A. Irreparable Harm

After carefully considering the matter, the Court find that Plaintiffs have sufficiently demonstrated irreparable harm. Specifically, it is not necessary to discuss in detail whether Plaintiffs have established the prong of irreparable harm because Defendants do not appear to directly challenge the existence of irreparable harm in their opposition memoranda of law. (*See*

---

[5] Alternatively, in such a circumstance, the "clear or substantial likelihood of success" requirement may be dispensed with if the movant shows that "extreme or very serious damage will result from a denial of preliminary relief." *Citigroup Global Markets, Inc.*, 598 F.3d at 35, n.4 (citing *Tom Doherty Assocs. v. Saban Entm't*, 60 F.3d 27, 34 [2d Cir. 1995]).

11

*generally* Dkt. No. 22, Attach. 1, at 6-14 [Def. Flynn's Opp'n Mem. of Law]; Dkt. No. 24, at 5-17 [Def. Wier's Opp'n Mem. of Law]; Dkt. No. 24, at 5-17 [Def. Wier's Opp'n Mem. of Law].) In this District, when a non-movant fails to oppose a legal argument asserted by a movant, the movant's burden with regard to that argument is lightened, such that, in order to succeed on that argument, the movant need only show that the argument possess facial merit, which has appropriately been characterized as a "modest" burden. *See* N.D.N.Y. L.R. 7.1(b)(3) ("Where a properly filed motion is unopposed and the Court determined that the moving party has met to demonstrate entitlement to the relief requested therein . . . ."); *Rusyniak v. Gensini*, 07-CV-0279, 2009 WL 3672105, at *1, n.1 (N.D.N.Y. Oct. 30, 2009) (Suddaby, J.) (collecting cases); *Este-Green v. Astrue*, 09-CV-0722, 2009 WL2473509, at *2 & nn.2, 3 (N.D.N.Y. Aug. 7, 2009) (Suddaby, J.) (collecting cases). Here, the Court finds that Plaintiffs have met that burden, regardless of whether the standard governing this part of their motion is a showing of irreparable harm (which is generally applicable to a motion for a preliminary injunction) or a *strong* showing of irreparable harm (which is applicable to a motion for a *mandatory* preliminary injunction). *See, supra,* Part II of this Decision and Order.

Of note, it is well established that an infringement or abridgment of the right to vote can suffice to show irreparable harm. *See Marchant v. New York City Bd. of Elecs.*, 815 F. Supp. 2d 568, 578 (E.D.N.Y. 2011) (noting that "infringement on the right to vote necessarily causes irreparable harm," and that the fundamental right to vote involves being prevented from accessing the polls or casting a vote for any candidate); *Westchester Disabled On the Move, Inc. v. Cnty. of Westchester*, 346 F. Supp. 2d 473, 478 (S.D.N.Y. 2004) (finding irreparable harm where disabled individuals were unable to vote at their assigned locations on election day, even

where absentee ballots were an option); *Montano v. Suffolk Cnty. Legislature*, 268 F. Supp. 2d 243, 260-61 (E.D.N.Y. 2003) ("An abridgment or dilution of the right to vote constitutes irreparable harm."); *People of New York ex rel. Spitzer v. Cnty. of Delaware*, 82 F. Supp. 2d 12, 16 (N.D.N.Y. 2000) (Munson, J.) ("If plaintiff demonstrates the inaccessibility of Delaware county's polling places will prevent disabled voters from voting, they will show the requisite irreparable harm."); *Puerto Rican Legal Defense and Educ. Fund, Inc. v. City of New York*, 769 F. Supp. 74, 79 (E.D.N.Y. 1991) ("[I]t is well settled that the claimed deprivation of a constitutional right such as the right to a meaningful vote or to the full and effective participation in the political process is in and of itself irreparable harm."). Because Plaintiffs allege that holding the caucus on the scheduled date as conditions currently exist would prevent segments of eligible Democrats (in particular, disabled voters) from voting in the caucus, Plaintiffs have meet the modest burden to show irreparable harm.

**B.     Likelihood of Success on the Merits or Sufficiently Serious Questions as to the Merits**

After carefully considering the parties' arguments on this issue, the Court finds that Plaintiff has not demonstrated a likelihood of success on the merits, for the reasons stated by Defendants in their memoranda of law. (Dkt. No. 22, Attach. 1, at 6-14 [Def. Flynn's Opp'n Mem. of Law]; Dkt. No. 24, at 5-17 [Def. Wier's Opp'n Mem. of Law]; Dkt. No. 25, at 3-8 [Defs. Crawford and Guilderland Democratic Comm.'s Opp'n Mem. of Law].) The Court would add only the following points.

As to Plaintiffs' ADA claim, in their opposition memoranda, Defendants argue that the ADA does not apply to Defendants because they are not public entities. (Dkt. No. 24, at 6-7 [Def. Wier Opp'n Mem. of Law]; Dkt. No. 25, at 4-5 [Defs. Crawford and Guilderland

13

Democratic Comm.'s Opp'n Mem. of Law].) However, Plaintiffs' Complaint specifies that their ADA claim is based on the fact that the caucus is being held at a place of public accommodation, not based on Defendants' status as a public entity. (Dkt. No. 1, at ¶¶ 66-69 [Pls.' Compl.].) The ADA specifies that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). Specifically, the ADA claim asserted requires a showing that (a) the plaintiff is disabled within the meaning of the ADA, (b) that the defendants own, lease, or operate a place of public accommodation, and (c) that the defendants discriminated against the plaintiff by denying him a full and fair opportunity to enjoy the services provided by the defendants. *Camarillo v. Carrols Corp.*, 518 F.3d 153, 156 (2d Cir. 2008). The definition of "public accommodation" includes such locations as "an auditorium, convention center, lecture hall, or other place of public gathering," and "a park, zoo, amusement park, or other place of recreation." 42 U.S.C. § 12181(7). Black's Law Dictionary defines "lease" as "[t]o grant the possession and use of (land, buildings, rooms, movable property, etc.) to another in return for rent or other consideration." Black's Law Dictionary (10th Ed. 2014). Because Plaintiffs have submitted evidence showing that Defendant Guilderland Democratic Committee paid $150 to the Town of Guilderland to rent the Large Pavilion for the caucus and because the Large Pavilion meets the definition of a public accommodation, the ADA is applicable for the purposes of this motion, regardless of whether Defendants (particularly the Guilderland Democratic Committee) are public entities. *See Coddington v. Adelphi Univ.*, 45 F. Supp. 2d 211, 215 (E.D.N.Y. 1999) ("[T]he question of

whether a person is a proper defendant under [Title III of] the ADA turns not on whether the defendant is a person, partnership, corporation or other entity but, instead, whether the defendant *owns*, *leases*, or *operates* a place of public accommodation within the meaning of the ADA.") (emphasis in original).

According to Title III of the ADA, discrimination includes "failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities," and "failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services." 42 U.S.C. §§ 12182(b)(2)(A)(ii), (iii).

In this case, Defendants have offered to make a number of modifications to the pavilion and surrounding park area in order to ameliorate the accessibility concerns raised in Plaintiffs' motion. In particular, Defendant Wier, who was formerly the Director of Parks and Recreation for the Town of Guilderland, stated that the Town employs various temporary measures for events when large crowds are anticipated (which will be implemented for the caucus), including (a) two signs for handicapped parking spaces in the lot near the Large Pavilion and cones to allow space for wheelchair loading and unloading, (b) a sign at the entrance to the Large Pavilion that will indicate the lot near to the pavilion is restricted to vehicles with handicapped stickers or persons being dropped off, (c) an additional portable handicapped bathroom will be installed, (d) the ability for the Guilderland Democratic Committee to erect tents adjacent to the Large Pavilion, and (e) the presence of Town Police to direct traffic into the park and of

15

volunteers to direct voters to appropriate parking spaces. (Dkt. No. 24, Attach. 1, at ¶ 15 [Wier Aff.].) At the hearing, although Plaintiffs continued to argue that the park and the Large Pavilion contained technical violations of the ADA, Plaintiffs failed to provide any persuasive argument as to why the temporary changes proposed by Defendants are not reasonable modifications that will allow disabled voters to equally access the caucus specifically. The Court finds that such temporary modifications (outlined in detail in the Court's Order below)[6] are reasonable steps to allow individuals with disabilities to be included in the caucus in a full and equal manner at the current location. Because these modifications appear to be sufficient to allow equal access to the caucus, Plaintiffs have not shown a likelihood of success on the merits of their ADA claim.

As to Plaintiffs' equal protection claim, the Court notes that Plaintiffs have failed to allege that they have been subjected to disparate treatment as a result of an impermissible classification or constitutionally protected class and therefore are limited to seeking relief under either a selective enforcement or "class of one" theory. *See AYDM Associates, LLC v. Town of Pamelia*, 205 F. Supp. 3d 252, 265 (N.D.N.Y. 2016) (D'Agostino, J.) (noting that, where a plaintiff is not a member of a constitutionally protected class, "he may bring an equal protection claim pursuant to one of two theories: (1) selective enforcement, or (2) 'class of one'"). Under either theory, Plaintiffs were required to identify similarly situated persons who were treated differently, something that they have not done. *Zahra v. Town of Southold*, 48 F.3d 674, 683 (2d Cir. 1995); *AYDM Associates*, 205 F. Supp. 3d at 265 (quoting *Vill. of Willowbrook v. Olech*,

---

[6] The Court conducted a conference call with Defendants on July 24, 2018, during which Defendants consented to provide specific modifications for the date of the caucus to address Plaintiffs' ADA compliance concerns. (Text Minute Entry, 7/24/2018.)

16

528 U.S. 562, 564 [2000]). In particular, to the extent that Plaintiffs argue that the comparison is between the voters in the Guilderland Democratic Party and voters in all other parties in Guilderland (who use a primary system), the Court finds that to be an insufficient comparison to show a likelihood of success on the merits of their equal protection claim.

For these reasons, the Court rejects Plaintiffs' argument that they have demonstrated a likelihood of success on the merits.

### D. Balance of Equities and Public Interest

Lastly, the Court finds that, in the alternative, Plaintiffs have not demonstrated that there is a balance of the equities in their favor or that the injunction would not disserve the public interest. Particularly, as noted by Defendant Wier in his opposition memorandum of law, issuing an injunction to stop the caucus from taking place on July 26, 2018, would negatively impact Democratic voters who are planning to attend the caucus on that date, as well as the other candidates seeking nomination at the caucus because they have already invested time and money into campaigning with that date in mind. (Dkt. No. 24, at 16-18 [Wier Opp'n Mem. of Law].) Additionally, the Guilderland Democratic Committee would be unduly harmed if the only other feasible alternative would be to hold a primary (in which it is almost guaranteed a more ADA-compliant polling place), given that they would have needed to notice a primary four months before September 13, 2018, and that they would need to expend significant amount of money and time to comply with the other requirements of a primary. Consequently, Plaintiffs have not shown that the equities are balanced in their favor or that the public interest warrants granting the injunction.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiffs' motion for a preliminary injunction and temporary restraining order (Dkt. No. 5) is **DENIED;** and it is further

**ORDERED** that, pursuant to Defendants' consent, Defendants Guilderland Democratic Committee and Crawford shall implement the following list of reasonable modifications to the Large Pavilion and Tawasentha Park for the caucus:

(1) provision of a monitor to be stationed at or near the front gate of Tawasentha Park that will be tasked with informing the Committee if a traffic back-up occurs, and with ensuring that the caucus does not begin until all vehicles traveling to the caucus have entered the park and all individuals are in the pavilion;

(2) reservation of the 30-space parking lot adjacent to the Large Pavilion for handicapped parking (or drop off of individuals), allowing sufficient space for entrance and exiting of vehicles with wheelchairs or other assistive devices; in addition, a monitor shall be stationed at this parking lot in order to collect the vote of any person who feels unsafe entering the pavilion due to disability and wishes to remain in their vehicle while casting their vote;[7]

(3) installation of an angled or beveled device at the threshold of the permanent bathroom to allow access for individuals using wheelchairs or other assistive devices, as well as provision of an additional portable handicapped accessible restroom;

---

[7] The accommodation is specifically designed to address concerns regarding the condition of the asphalt surface of the lot and the allegedly non-ADA-compliant grade of the walkway from the lot to the Large Pavilion.

(4)  provision of a monitor for all additional parking areas being used for the caucus who will be tasked with ensuring that all individuals arriving for the caucus are able to get to the Large Pavilion before the caucus can begin; methods for assisting individuals who may have difficulty walking to the pavilion could include golf carts or other appropriate shuttle vehicles; and

(5)  provision of a monitor to ensure that the walkway of the Large Pavilion is kept open and free of obstructions to ensure that all attending can vote safely, including managing any possible overflow of the crowd to outside the Large Pavilion.

**IT IS SO ORDERED**

Dated: July 24, 2018
       Syracuse, New York

_____
Hon. Glenn T. Suddaby
Chief U.S. District Judge