UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

CHRISTINE M. NAPIERSKI, an aggrieved candidate
for public office in the Democratic Party, and
EUGENE E. NAPIERSKI, an enrolled voter of the
Democratic Party residing in the Town of
Guilderland, New York,

                                    Plaintiffs,

       -against-

THE GUILDERLAND DEMOCRATIC COMMITTEE,
THE ALBANY COUNTY DEMOCRATIC                    Case No. 1:18-cv-846 (GTS/DJS)
COMMITTEE, JACOB CRAWFORD, individually
and as Chairman or Acting Chairman, Guilderland
Democratic Committee, JACK FLYNN, individually
and as Chairman, Albany County Democratic
Committee, ALBANY COUNTY BOARD OF
ELECTIONS, MATTHEW J. CLYNE, in his official
capacity as Commissioner, Albany County Board
of Elections, RACHEL L. BLEDI, in her official
capacity as Commissioner, Albany County Board
of Elections, BRYAN M. CLENAHAN, Candidate
for Guilderland Town Justice, and GREGORY J.
WIER, Candidate for Guilderland Town Highway
Superintendent,

                                  Defendants.

---

**MEMORANDUM OF LAW IN OPPOSITION TO THE MOTIONS TO DISMISS BY
DEFENDANT WIER PURSUANT TO RULES 12(b)(1) and 12(b)(6), AND BY
DEFENDANTS GUILDERLAND DEMOCRATIC COMMITTEE AND JACOB
CRAWFORD PURSUANT TO RULE 12(c)**

                                 Respectfully submitted,

                                  NAPIERSKI, VANDENBURGH,
                                  NAPIERSKI & O'CONNOR, LLP
                                  *Attorneys for Plaintiffs*
                                  296 Washington Ave. Ext., Suite 3
                                  Albany, New York 12203
                                  (518) 862-9292

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................................................ii

PRELIMINARY STATEMENT ......................................................................................... 1

ARGUMENT
      THE COMPLAINT SHOULD NOT BE DISMISSED............................................... 1

A.     This Court's conclusions and findings at the hearing on the request
       For a temporary restraining order are not preclusive or dispositive ...................... 2

B.     The claims should not be dismissed for mootness ................................................. 3

       First Prong of Moving Defendants' Mootness Argument ....................................... 4

       Second Prong of Moving Defendants' Mootness Argument ................................... 7

       Third Prong of Moving Defendants' Mootness Argument ...................................... 9

C.     Plaintiffs have adequately articulated a claim for violation of the
       Twenty-Fourth Amendment ................................................................................. 10

D.     Plaintiffs have sufficiently pled claims under the Fourteenth Amendment,
       Remediable by 42 U.S.C. § 1983 (responding to movants' points C and E) ...... 12

E.     New York Election Law § 6-108 is unconstitutional as applied to plaintiffs ......... 17

F.     Plaintiffs' claims under the ADA and the NYSHRL should not be dismissed ...... 21

CONCLUSION ............................................................................................................... 22

**TABLE OF AUTHORITIES**

**Cases**

Allen v. Wright, 468 U.S. 737 (1984) ............................................................................... 3

Already, LLC v. Nike, Inc., 568 U.S. 85 (2013) ................................................................ 3

Anderson v. Celebrezze, 460 U.S. 780 (1983) ................................................................ 18

Anderson v. Mallamad, IP-94-1447-C H/G, 1997 WL 35024766
    (S.D. Ind. 1997) ....................................................................................................... 9, 10

Arizonans for Official English v. Arizona, 520 U.S. 43 (1997) ......................................... 3

Ashcroft v. Iqbal, 556 U.S. 662 (2009) ............................................................................ 2

Barr v. Galvin, 626 F.3d 99 (1st Cir. 2010) .................................................................... 17

Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) ...................................................... 2

Berrigan v. Sigler, 499 F.2d 514 (D.C. Cir. 1974) ........................................................... 2

Brown v. NYC Bd. of Elections, 13-CV-2729, 2013 WL 6248451
    (E.D.N.Y. Dec. 3, 2013) ............................................................................................... 5

Burdick v. Takushi, 504 U.S. 428 (1992) .................................................................. 18, 19

California Democratic Party v. Jones, 530 U.S. 567 (2000) ........................................... 21

Carey v. Piphus, 435 U.S. 247 (1978) .............................................................................. 5

Chafin v. Chafin, 568 U.S. 165 (2013) ............................................................................. 4

Christoff v. Saturn Business Systems, 2013 WL 394131 (S.D.N.Y. Feb. 1, 2013) ........ 10

Clements v. Fashing, 457 U.S. 957 (1982) ..................................................................... 17

Davis v. Bandemer, 478 U.S. 109 (1986) ....................................................................... 17

Dean v. Blumenthal, 577 F.3d 60 (2d Cir. 2009) ............................................................. 4

Dunn v. Blumstein, 405 U.S. 330 (1972) ........................................................................ 15

Felder v. Casey, 487 U.S. 131 (1988) .............................................................................. 7

Flagg Bros., Inc. v. Brooks, 436 U.S. 149 (1978) ..................................................... 4, 11

Fox v. Bd. of Trustees of St. Univ. of New York, 42 F.3d 135 (2d Cir. 1994) ................. 4

Free v. Bland, 369 U.S. 663 (1962).............................................................................. 7

Goodheart Clothing Co., Inc. v. Laura Goodman Enterprises, Inc.,
    962 F.2d 268 (2d Cir. 1992) ................................................................................. 2

Harper v. Virginia State Bd. of Elections, 383 U.S. 663 (1966) .................................... 11

Hirschfeld v. Spanakos, 871 F.Supp. 190 (S.D.N.Y. 1994) ............................................ 4

Hogan v. A.O. Fox Memorial Hosp., 346 Fed.Appx. 627 (2d Cir. 2009)....................... 11

Knox v. Service Employees Int'l Union, 567 U.S. 298 (2012).......................................... 4

Kreisler v. Second Ave. Diner Corp., 731 F.3d 184 (2d Cir. 2013)................................ 22

Krislov v. Rednour, 226 F.3d 851 (7th Cir. 2000) ........................................................... 7

Kusper v. Pontikes, 414 U.S. 51 (1973) ...................................................................... 18

League of Women Voters of Ohio v. Brunner, 548 F.3d 463 (6th Cir. 2008)................. 15

Mantena v. Johnson, 809 F.3d 721 (2d Cir. 2015) ....................................................... 2

Morse v. Republican Party of Virginia, 517 U.S. 186........................................ 13, 14, 16

New York City Employees' Retirement System v. Dole Food Co., Inc.,
    969 F.2d 1430 (2d Cir. 1992) ........................................................................... 8, 9

Norman v. Reed, 502 U.S. 279 (1992) ......................................................................... 5

N.Y. State Bd. of Elections v. Lopez Torres, 552 U.S. 196 (2008) .......................... 14, 15

Obama for America v. Husted, 697 F.3d 423 (6th Cir. 2012) ....................................... 15

Paul v. Davis, 424 U.S. 693 (1976) ............................................................................. 15

Preiser v. Newkirk, 422 U.S. 395 (1975) ....................................................................... 3

Price v. New York St. Bd. of Elections, 540 F.3d 101 (2d Cir. 2008)............................ 19

Quick Response Commercial Division, LLC v. Cincinnati Insurance Company,
    1:14-cv-779(GLS/DEP), 2018 WL 2209203 (N.D.N.Y. May 14, 2018) .............. 12

Rivera-Powell v. New York City Bd. of Elections, 470 F.3d 458 (2d Cir. 2006) ............... 7

Seergy v. Kings County Republican Committee, 459 F.2d 308 (2d Cir. 1972)............. 14

Smith v. Allwright, 321 U.S. 649 (1944)........................................................................ 21

Soleil v. State of N.Y., CV043247DGT, 2005 WL 662682
        (E.D.N.Y. Mar. 22, 2005) ...................................................................................... 7

Stokes v. Vil. Of Wurtsboro, 818 F.2d 4 (2d Cir. 1987) ................................................. 4

Storer v. Brown, 415 U.S. 724 (1974) ............................................................................ 5

Tashjian v. Republican Party of Connecticut, 479 U.S. 208 (1986)............................... 14

Tennessee v. Garner, 471 U.S. 1 (1985) ....................................................................... 20

Terry v. Adams, 345 U.S. 461 (1953)............................................................................. 21

Trustees of Upstate New York Engineers Pension Fund v. Ivy Asset
        Management, 843 F.3d 561 (2d Cir. 2016)........................................................... 2

Tucker v. U.s. Dept. of Commerce, 958 F.2d 1411 (7th Cir. 1992) ............................... 11

U.S. v. Classic, 313 U.S. 299 (1941).............................................................................. 14

U.S. Term Limits, Inc. v. Thornton, 514 U.S. 779 (1995)................................................ 17

Ury v. Santee, 303 F.Supp. 119 (N.D. Ill. 1969) ............................................................ 15

Van Wie v. Pataki, 267 F.3d 109 (2d Cir. 2001) ............................................................. 4

Video Tutorial Services, Inc. v. MCI Telecommunications Corp.,
        79 F.3d 3 (2d Cir. 1996) ...................................................................................... 5

Weinstein v. Bradford, 423 U.S. 147 (1975) (per curiam)............................................... 5

## Statutes, Rule, and Constitutional Provision

Fed.R.Civ.P. 5.1 ............................................................................................................. 18

N.Y. Election Law § 6-108.......................................................................... 6, 17, 20, 21

N.Y. Election Law § 6-134............................................................................................. 6

N.Y. Election Law § 6-154 ................................................................................. 8

N.Y. Election Law § 6-158 ................................................................................. 6

N.Y. Election Law § 8-100 ................................................................................. 6

N.Y. Election Law § 16-102 ............................................................................... 8

U.S. Const., Amend. XXIV, § 1 ........................................................................ 11

### Secondary Authorities

"Town of Guilderland/Parks & Recreation", https://
      www.townofguilderland.org/about-town (last visited Oct. 29, 2018) .................. 12

"Town of Guilderland/Parks & Recreation", https://
      www.townofguilderland.org/parks-recreation (last visited Oct. 29, 2018) ........... 12

"Town of Guilderland/Resident Park/Transfer Station Sticker";
      https://www.townofguilderland.org/parks-recreation/pages/
      resident-parktransfer-station-sticker (last visited Oct. 29, 2018) ........................ 11

"Town of Guilderland/Transfer Station", https://
      www.townofguilderland.org/transfer-station (last visited Oct. 29, 2018) ............ 12

"Town of Guilderland/When is Tawasentha Park Open to the Public?";
      https://www.townofguilderland.org/parks-recreation/faq/
      when-tawasentha-park-open-public (last visited Oct. 29, 2018) ........................ 12

## PRELIMINARY STATEMENT

Plaintiffs CHRISTINE NAPIERSKI and EUGENE NAPIERSKI submit this Memorandum of Law in opposition to the motion by defendant GREGORY J. WIER for an order pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6), dismissing the Complaint for lack of subject matter jurisdiction and failure to state a claim, and in opposition to the motion by defendants THE GUILDERLAND DEMOCRATIC COMMITTEE and JACOB CRAWFORD (collectively "The GDC Defendants", and collectively with Wier, "the movants"), for an order pursuant to Fed.R.Civ.P. 12(c), dismissing the Complaint.

Because the papers submitted by the GDC Defendants consist solely of an adoption of the arguments contained in Wier's papers, this Memorandum of Law is submitted in opposition to both motions, with the filers collectively referenced herein as the "Moving Defendants" or "movants."

## ARGUMENT

### THE COMPLAINT SHOULD NOT BE DISMISSED.

The Moving Defendants assert several grounds as to why they believe the Complaint should be dismissed: (a) the allegations are moot; (b) plaintiffs have not alleged a violation of the Americans With Disabilities Act; (c) plaintiffs have not alleged a violation of the Voting Rights Act; (d) plaintiffs have not alleged a violation of the Equal Protection Clause of the Fourteenth Amendment; (e) the caucus method is constitutional; (f) there was no violation of 42 U.S.C. § 1983; (g) there was no violation of the New York State Human Rights Law.

When reviewing a Rule 12(b)(6) motion, courts must accept the factual allegations in the Complaint as true, and draw all reasonable inferences in plaintiffs'

favor. See Trustees of Upstate New York Engineers Pension Fund v. Ivy Asset Management, 843 F.3d 561, 566 (2d Cir. 2016).  The same standard applies on a Rule 12(c) motion for judgment on the pleadings. See Mantena v. Johnson, 809 F.3d 721, 727-28 (2d Cir. 2015). To survive a motion to dismiss, a complaint need only "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). In that regard, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). For the reasons set forth below, plaintiffs have amply pled sufficient facts to support the legally cognizable theories asserted in the Complaint.

**A.**     **This Court's conclusions and findings at the hearing on the request for a temporary restraining order are not preclusive or dispositive.**

Initially, to the extent that the movants argue that this Court already reached the merits of the claims asserted in the Complaint when it denied the motion for preliminary relief, the ruling on the motion for a preliminary injunction has no preclusive effect. "A preliminary determination of likelihood of success on the merits in a ruling on a motion for preliminary injunction is ordinarily tentative, pending a trial or motion for summary judgment. . . . It would therefore be anomalous at least in most cases, and here, to regard the initial ruling as foreclosing the subsequent, more thorough consideration of the merits that the preliminary injunction envisions." Goodheart Clothing Co., Inc. v. Laura Goodman Enterprises, Inc., 962 F.2d 268, 274 (2d Cir. 1992). See also Berrigan v. Sigler, 499 F.2d 514, 518 (D.C. Cir. 1974) (decision whether to grant or deny preliminary injunction does not constitute law of the case, and does not limit the parties from litigating the merits, unless there has been consolidation with a trial on the merits).

2

Here, the hearing on the TRO and preliminary injunction was not consolidated with a trial on the merits. Further, as the Court observed in the Text Order granting the hearing, the briefing schedule could not afford plaintiffs an opportunity to reply to defendants' arguments in opposition to the motion. Thus, given the preliminary nature of the motion, plaintiffs ask that they be heard in opposition to the motions.

**B.**   **The claims should not be dismissed for mootness.**

The Moving Defendants assert that plaintiffs no longer possess a remediable claim, rendering the action moot. In support of that claim, the Moving Defendants argue generally that plaintiffs' claim is moot because 1) the caucus was held, and plaintiffs did not seek immediate appellate relief from the Second Circuit; and 2) no objections were ever filed with the Albany County board of Elections (hereinafter "ACBOE"), challenging the result of the caucus, and no proceeding was ever commenced pursuant to the N.Y. Election Law challenging the "certified nomination of candidates." Defendant Wier also alleges that the Court lacks subject matter jurisdiction over him because there is no longer a case or controversy concerning him. Each will be addressed in turn.

The mootness doctrine requires there to be a "'personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." Already, LLC v. Nike, Inc., 568 U.S. 85, 90 (2013) (quoting Allen v. Wright, 468 U.S. 737, 751 [1984]). The controversy "must be extant at all stages of review, not merely at the time the complaint is filed." Arizonans for Official English v. Arizona, 520 U.S. 43, 67 (1997) (quoting Preiser v. Newkirk, 422 U.S. 395, 401 [1975]).

However, "[a] case becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party." Knox v. Service Employees Int'l

Union, 567 U.S. 298, 307 (2012). "As long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot." Chafin v. Chafin, 568 U.S. 165, 172 (2013) (quoting Knox, 567 U.S. at 307-08). The Second Circuit has held that "plaintiffs in election cases could avoid the potential for mootness by simply expressly pleading that should the election pass before the issuance of injunctive relief, nominal money damages are requested." Van Wie v. Pataki, 267 F.3d 109, 115 n.4 (2d Cir. 2001). Likewise, "[c]laims for damages or other monetary relief automatically avoid mootness, so long as the claim remains viable." Stokes v. Vil. of Wurtsboro, 818 F.2d 4, 6 (2d Cir. 1987); see Flagg Bros., Inc. v. Brooks, 436 U.S. 149, 154 n.3 (1978) (even if injunctive relief is no longer available, courts must reach merits if plaintiff can establish claim for damages). Further, even if plaintiffs could not prove their claims for damages, "nominal damages are available in actions alleging violations of constitutionally protected rights. Dean v. Blumenthal, 577 F.3d 60, 66 (2d Cir. 2009) (quoting Fox v. Bd. of Trustees of St. Univ. of New York, 42 F.3d 135, 141 [2d Cir. 1994]).

*First Prong of Moving Defendants' Mootness Argument*

As to the first prong of the movants' claim, plaintiffs claim damages as part of the relief they seek. As delineated in the Civil Case Management Plan (Docket No. 50, p. 2), this would include campaign expenditures incurred in an election that were lost due to GDC's illegal use of the caucus system. These expenses, among others, in addition to statutory attorney's fees, are recoverable damages. See Hirschfeld v. Spanakos, 871 F.Supp. 190, 195 (S.D.N.Y. 1994) (recognizing campaign expenses as potentially recoverable damages in action alleging that plaintiff lost election due to defendants' unconstitutional conduct). In any event, regardless whether such damages can be

4

proven, both plaintiffs (Christine Napierski as candidate, and Eugene Napierski as voter), are entitled to nominal damages by virtue of their constitutional claims. See Carey v. Piphus, 435 U.S. 247, 266-67 (1978). Accordingly, the claim is not moot.

Yet, even were the Court to find the action moot, the "capable of repetition, yet evading review" exception to the mootness doctrine applies here. The Court may "hear an otherwise moot appeal of a controversy that is capable of repetition yet evading review when '(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation or a demonstrated probability that the same complaining party would be subjected to the same action again.'" Video Tutorial Services, Inc. v. MCI Telecommunications Corp., 79 F.3d 3, 6 (2d Cir. 1996) (quoting Weinstein v. Bradford, 423 U.S. 147, 149 [1975] [per curiam]).

Courts have specifically held that matters relating to elections can survive a mootness challenge because they are likely to arise again, and therefore meet the capable-of-repetition exception. See Storer v. Brown, 415 U.S. 724, 738 n.8 (1974) (case not moot because, though election was long over, the issues presented, and their effects on independent candidacies, "will persist as the California statutes are applied in future elections."); see also Brown v. NYC Bd. of Elections, 13-CV-2729, 2013 WL 6248451, *1 (E.D.N.Y. Dec. 3, 2013).

Here, "[t]here would be every reason to expect the same parties to generate a similar, future controversy subject to identical time constraints" if the Court were not to resolve the constitutional issues raised here. See Norman v. Reed, 502 U.S. 279, 288 (1992). The Complaint alleges that the GDC's general method of nominating candidates

is the caucus system (Docket No. 1 ¶ 28). It also alleges that the GDC's general practice is to do so in order to keep control of nominations close to the party leadership by discouraging, or rendering impossible, participation by the Democratic voters of the Town (Docket No. 1 ¶ 40). At the hearing on the motion for a preliminary injunction, consistent wth the allegations in the Complaint, the Court heard testimony that the GDC has used the caucus system in the past, and that no other parties in the Town of Guilderland do so. Based on the allegations, there is a clear likelihood that the GDC will continue to employ the caucus system to select the party's nominees in the future.

Moreover, challenges to future caucuses will always evade review given the short notice period required before holding a caucus. Under the New York Election Law, a political party must wait until ten days prior to the date of a caucus before providing public notice of the caucus. N.Y. Election Law § 6-108(3). Thus, like here, any challenge to a future caucus will necessarily have an exceedingly short window of opportunity for challenge in this Court. Further, the caucus can be held no earlier than the first day on which designating petitions for the fall primary election can be circulated (N.Y. Election Law § 6-108[1]), which falls thirty-seven days before the last day to file designating petitions, which, in turn, is the ninth Thursday preceding the primary election. N.Y. Election Law §§ 6-134(4), 6-158(1). Since the primary election is held the first Tuesday after the Second Monday in September (N.Y. Election Law § 8-100[1][a]), and the general election is held the Tuesday after the first Monday in November (N.Y. Election Law § 8-100[1][c]), the time between notice of caucus and the general election is, at most, a period of approximately six months, well short of any realistic expectation of a

civil action to run its course. Accordingly, challenges to the caucus system will always evade review.

Lastly, plaintiffs have alleged that Election Law § 6-108 is unconstitutional as applied to them, specifically because it permits different political parties within the same group of voters to adopt different methods of nominating candidates, one being designed to encourage maximum voter participation, and to protect the integrity of the electoral process, and the other being almost entirely unregulated, allowing for the party to effectively assure its chosen candidate to be nominated by effectively excluding voter participation. Thus, the effect of this statute is "applicable to future elections and therefore 'fall[s] under the "capable of repetition yet evading review" exception to mootness doctrine.'" See Soleil v. State of N.Y., CV043247DGT, 2005 WL 662682, *4 (E.D.N.Y. Mar 22, 2005) (quoting Krislov v. Rednour, 226 F.3d 851, 858 [7th Cir. 2000]).

*Second Prong of Moving Defendants' Mootness Argument*

"The general rule is that § 1983 claims, including First Amendment claims, do not require exhaustion of state remedies." Rivera-Powell v. New York City Bd. of Elections, 470 F.3d 458, 468 n. 12 (2d Cir. 2006). Likewise, the Supreme Court has articulated that "[t]he relative importance to the State of its own law is not material when there is a conflict with a valid federal law, . . . [and] any state law, however clearly within a State's acknowledged power, which interferes with or is contrary to federal law, must yield." Free v. Bland, 369 U.S. 663, 666 (1962). For example, it is well-settled that state notice-of-claim requirements are not applicable to claims asserted under section 1983, whether in state or federal court. See Felder v. Casey, 487 U.S. 131, 138 (1988).

Here, plaintiffs are seeking remedies under federal statutes, the United States Constitution, and the New York State Human Rights Law. None of the claims arises out of the Election Law. Thus, this Court unquestionably has the authority to award injunctive relief and damages without plaintiffs first complying with the procedural prerequisites set forth in the Election Law. Indeed, that state-level scheme ultimately results in a determination by the Board of Elections as to whether to certify the caucus result, and ultimately the New York State Supreme Court for decision on that certification. See N.Y. Election Law §§  6-154, 16-102(2). Movants' arguments are tantamount to the notion that plaintiffs must pursue parallel litigation in state court to achieve the same goal sought in this Court. They cite to no authority supporting their premise. Since this Court is not bound by state-based procedural requirements prior to determining whether there exists a federal claim, this prong of the mootness argument must be rejected. Movants' argument with respect to objections with the ACBOE is repeated throughout their motion, and is meritless for these reasons on each occasion.

Movants rely upon New York City Employees' Retirement System v. Dole Food Co., Inc. (hereinafter "NYCERS"), 969 F.2d 1430 (2d Cir. 1992), to support their mootness argument (Wier Memo. of Law, pp. 4-5). However, the issue that the Second Circuit deemed moot there bore no resemblance to those raised here. In NYCERS, the plaintiff had obtained a preliminary injunction requiring the defendant to include a certain proposal statement with proxy materials mailed to shareholders before the defendant's annual meeting. NYCERS, 969 F.2d at 1431-32. In compliance with the injunction, the defendant included the materials with its mailing, and on expedited appeal, no stay of the injunction was sought. The court held that because the statement had been already

been mailed, and that mailing could not be halted, there was no relief to be gained from an appeal, the issue was moot. Id. at 1433. There were apparently no claims of damages, as there are here, or that future conduct would be affected by the ruling.

Given the time constraints here, it would have required a herculean effort just to seek a stay prior to the holding of the caucus. This Court filed its decision on the motion for a restraining order and preliminary injunction on July 24, 2018, at 4:00 p.m. The caucus was scheduled (and held) during the evening of July 26, 2018. This gave plaintiffs two days to prepare an application for a stay to the Second Circuit and brief the issues raised. As held in the cases plaintiffs rely upon, there is simply no basis to suggest that a two-day window to seek a stay is sufficient to avoid a finding that the matter does not evade review.

*Third Prong of Moving Defendants' Mootness Argument*

Defendant Wier makes a third mootness argument, that the Court lacks subject matter jurisdiction over him. Defendant Gregory Wier was named as a defendant in light of the injunctive relief sought as part of this action, because his nomination was slated to occur at the caucus. Accordingly, he had the right to be heard on any relief that would affect the convening of the caucus. Plaintiffs concede that they have no active case or controversy directly against him at this time, and have not sought any relief against him.

That said, insofar as Wier could conceivably be a necessary party with respect to any remedy that this Court fashions, the Court retains jurisdiction over him. In Anderson v. Mallamad, IP-94-1447-C H/G, 1997 WL 35024766 (S.D.Ind. 1997), the Southern District of Indiana denied a motion to dismiss against an election commission that was named as a "nominal party," but whose role in the alleged conduct was "ministerial at

best." <u>Anderson</u>, at *2. The court denied a motion to dismiss for lack of case or controversy, holding that the parties were "necessary parties at the remedial stage of this case if plaintiffs are entitled to a remedy." <u>Id.</u> at *4. If the Court finds that Wier must remain in the case for remedy purposes, then it should retain jurisdiction over him.

Of course, the GDC and Crawford <u>are</u> the subject of claims for relief. To the extent their papers adopt Wier's subject matter jurisdiction argument as applying to them as well, that claim should be denied because there is plainly an active case against them.

**C.** **Plaintiffs have adequately articulated a claim for violation of the Twenty-Fourth Amendment.**

Defendants assert that the Second Cause of Action should be dismissed because there was no fee collected to enter the park, and because no objections were filed with the Board of Elections. The claim misses the point of the argument. Initially, the assertion that no fee was collected is raised in an unsworn Memorandum of Law, and is therefore of no probative value. <u>See</u> <u>Christoff v. Saturn Business Systems</u>, 2013 WL 394131, *2 (S.D.N.Y. Feb. 1, 2013) (rejecting plaintiff's unsworn factual recitation in favor of defendant's statement of material facts on summary judgment that relied upon the record). However, even if plaintiffs concede that no fee was collected on the evening of the caucus,[1] the fact remains that this was not publicized. To the contrary, as pled in the complaint, the general policy of the Tawasentha Park is that only those whose vehicles bear a resident stamp, which must be applied for at certain locations during certain times according to the Town of Guilderland, may enter without paying a fee.

---

[1] It was the experience of plaintiffs and the undersigned that vehicles were being permitted into the park during the hours preceding the caucus without a fee being collected or vehicle inspected for resident sticker.

As pled, the Town policy is to require either an affixed sticker or, if one has not obtained one from the proper sources, to pay a fee. This plainly violates the Twenty-Fourth Amendment, which is explicit in forbidding the collection of a "poll tax or any other tax" as a prerequisite to voting in a federal election. See U.S. Const., Amend XXIV, § 1. This proscription applies to state elections via the Fourteenth Amendment, as recognized in Harper v. Virginia State Bd. of Elections, 383 U.S. 663, 668 (1966).

Even if no fee was actually collected on the night of the caucus, the Town's policy would have discouraged those voters who neither had a resident sticker nor wished to pay the fee, but who were aware of the general policy. See, e.g., Tucker v. U.S. Dept. of Commerce, 958 F.2d 1411, 1415 (7th Cir. 1992) (recognizing that poll taxes have the effect of "discourag[ing] voting"). As articulated in plaintiffs' brief in support of their motion for a preliminary injunction, the Town's webpage was clear that those entrants into the park must have either obtained a sticker from an office that was closed prior to the time of the caucus, or paid a fee to enter.

Park stickers are valid for two years, and can be obtained at the Town Parks and Recreation Office, Town Hall, or the Transfer Station. If the vehicle registration lists a physical address within the Town of Guilderland, then that document suffices as proof of residency; otherwise the resident must bring some other proof of residency. See "Town of Guilderland/Resident Park/Transfer Station Sticker"; https://www.townofguilderland.org/parks-recreation/pages/resident-parktransfer-station-sticker (last visited Oct. 29, 2018). While residents with a park sticker affixed to their vehicle may enter at no charge, non-residents must pay a ten-dollar fee per vehicle. See "Town of Guilderland/When is Tawasentha Park Open to the Public?";

https://www.townofguilderland.org/parks-recreation/faq/when-tawasentha-park-open-public (last visited Oct. 29, 2018).

The Parks and Recreation office closes at 3:30 p.m. (see "Town of Guilderland/Parks & Recreation", https://www.townofguilderland.org/parks-recreation [last visited Oct. 29, 2018]); Town Hall closes at 4:30 p.m. (see "Town of Guilderland/Parks & Recreation", https://www.townofguilderland.org/about-town [last visited Oct. 29, 2018]); and the Transfer Station closes at 3:30 p.m. (see "Town of Guilderland/Transfer Station", https://www.townofguilderland.org/transfer-station [last visited Oct. 29, 2018]). Thus, if an interested voter viewed the webpage, he/she would have learned that the only sources of a resident sticker were closed, and could reasonably presume that he/she would otherwise have to pay to vote. Regardless of whether a fee was actually collected, this clearly would have dissuaded eligible and interested voters from attending.

**D.** **Plaintiffs have sufficiently pled claims under the Fourteenth Amendment, remediable by 42 U.S.C. § 1983 (responding to movants' points C and E).**

The Moving Defendants argue that plaintiffs have not identified disparate treatment sufficient to articulate an Equal Protection claim (Wier Mem. of Law, p. 7). Defendants' position is without merit.

As an initial point, defendants do not appear to challenge the allegation in the Complaint that they were acting under color of state law. Accordingly, any argument in their reply papers that they were not acting under color of state law should be disregarded. See Quick Response Commercial Division, LLC v. Cincinnati Insurance Company, 1:14-cv-779(GLS/DEP), 2018 WL 2209203, *2 (N.D.N.Y. May 14, 2018) (disregarding claims made in reply). In any event, defendants clearly acted under color

of state law because their caucus was the sole means by which a Democratic candidate is placed on the general election ballot. The conduct of private actors can be attributed to the state if "(1) the State compelled the conduct, (2) there is a sufficiently close nexus between the State and the private conduct, or (3) the private conduct consisted of activity that has traditionally been the exclusive prerogative of the State." Hogan v. A.O. Fox Memorial Hosp., 346 Fed.Appx. 627, 629 (2d Cir. 2009).

While political parties, generally, are private organizations, whether or not they are subject to section 1983 liability depends on the nature of their activities that are the subject of a suit. The Supreme Court has made it clear that "[w]hile the Constitution protects private rights of association and advocacy with regard to the election of public officials, our cases make it clear that the conduct of the elections themselves is an exclusively public function." Flagg Bros., Inc. v. Brooks, 436 U.S. 149, 158 (1978). A plurality of the Supreme Court has expressly held this standard to apply to political parties' activities designed to place their candidates on the general election ballot. In Morse v. Republican Party of Virginia, 517 U.S. 186 (1996), the plaintiffs had challenged a registration fee charged in connection with the party's convention called to nominate a candidate for United States Senator. Morse, 517 U.S. at 190. The Court found that the political party was a state actor because its convention was the means by which a candidate would appear on the general ballot as that party's nominee. Id.

The Court rejected arguments that a political party will only become a state actor if its nominee is virtually certain to win the general election, holding, "[v]oting at the nomination stage is protected regardless of whether it 'invariably, sometimes or never determines the ultimate choice of representation.'" Id. at 218 (quoting U.S. v. Classic,

313 U.S. 299, 318 (1941). More succinctly, the <u>Morse</u> Court observed, "[t]he operative test, as we have stated repeatedly, is whether a political party exercises power over the electoral process." <u>Id.</u> at 218. <u>See</u> <u>also</u> <u>Seergy v. Kings County Republican Committee</u>, 459 F.2d 308, 315 (2d Cir. 1972) (affirming invalidation of political party committee's rules as they apply to matters "integral to the electoral process" while reversing invalidation as to "internal party matters or on matters only <u>indirectly</u> relating to the selection of party nominees" [emphasis added]).

The GDC Defendants' roles in the public function of placing candidates on the general election ballot is critical because it is that function that underpins plaintiffs' claim. The Complaint alleges that the GDC exploits the caucus method to keep control of its nominations close to the committee by making voter participation either difficult or impossible if those voters cannot attend in Tawasentha Park on the night of the caucus. The movants argue that plaintiffs have not demonstrated disparate treatment based on defendants' assertion that plaintiffs have not alleged that "other similarly situated persons were treated differently" (Wier Mem. of Law, p. 7). The movants cite to <u>Tashjian v. Republican Party of Connecticut</u>, 479 U.S. 208 (1986), for the principle that states have the authority to regulate elections, and they rely on <u>N.Y. State Bd. of Elections v. Lopez Torres</u>, 552 U.S. 196 (2008), to argue that a political party enjoys the First Amendment right to "use a candidate selection process which, in its opinion, will result in selecting a nominee who best represents its platform" (Wier Mem. of Law, pp. 9-10). Movants conflate regulation with disparity between means of selecting candidates.

The Supreme Court has indeed held, as movants note, that states are granted discretion to regulate elections. For example, there is no constitutional right to an

absentee ballot. See Obama for America v. Husted, 697 F.3d 423, 439 (6th Cir. 2012). However, once a state grants a right, its administration of that right must comport with the Fourteenth Amendment. See Paul v. Davis, 424 U.S. 693, 711-12 (1976). Lopez Torres upheld the validity of a New York election law establishing nominating conventions as the means of selecting nominees for New York Supreme Court Justice (552 U.S. at 208-09), but the critical distinction between that case and the instant one is that the statute provided for nominating conventions as the only means to select a candidate for that particular office. Under the statute at issue there, the circumstance would never arise where one party would select its candidate by nominating convention and another by primary election. The critical factor reconciling Paul and Lopez Torres, and distinguishing them from the case here, is the uniformity in application.

Here, the GDC Defendants are effectively filling a public role by selecting a candidate to be placed on the general election ballot, and they are doing so in a manner that willfully violates plaintiffs' rights under the Constitution. "In decision after decision, [the U.S. Supreme Court] has made clear that a citizen has a constitutionally protected right to participate in elections on an equal basis with other citizens in the jurisdiction." Dunn v. Blumstein, 405 U.S. 330, 336 (1972). In League of Women Voters of Ohio v. Brunner, 548 F.3d 463 (6th Cir. 2008), the Sixth Circuit found that where certain polling places were provided inadequate staff and voting machines, causing long lines and possible discounted votes, while other poling places did not experience the same difficulties, the plaintiffs adequately stated violations of the Equal Protection Clause. Brunner, 548 F.3d at 478. See also Ury v. Santee, 303 F.Supp 119, 126 (N.D.Ill. 1969) (because of defendants' failure to provide "substantially equal voting facilities, plaintiffs

and those similarly situated were discriminated against in the exercise of their franchise," which violated the Equal Protection Clause.).

As articulated in the Complaint, the New York Election Law provides for a sophisticated, comprehensive set of protections and safeguards that ensure both the integrity of an election, and a full opportunity to vote. These protections apply identically to primary and general elections. The caucus, however, is exempted from nearly every protection afforded the voters. The Complaint alleges that all parties within the Town of Guilderland avail themselves of the primary, except the GDC, who deliberately uses the caucus in order to keep control of the nomination with the committee, particularly in the case of plaintiff C. Napierski, and to deprive the Democratic voters of the Town of Guilderland the protections enjoyed by members of the other political parties.

In its decision on the motion for a preliminary injunction, the Court found that the disparity asserted between plaintiffs and members of the other political parties in the Town of Guilderland that use the primary system was an "insufficient comparison to show a likelihood of success on the merits of their equal protection claim" (Court's Order, Docket No. 30, p. 17). Plaintiffs submit that the distinction between them and the members of those other parties is sufficient to articulate an equal protection claim. As discussed in decisions such as Morse, supra, the GDC is effectively acting as a delegate of state elections officials when it selects and certifies a Democratic candidate for inclusion on the general ballot. See Morse, 517 U.S. at 195 ("the Party exercised delegated state power when it certified its nominee for automatic placement on Virginia's general election ballot"). Thus, whereas all other parties in the Town select their nominees by primary election, which is conducted and inspected by the Board of

Elections, and is afforded numerous protections as provided for under Article 8 of the New York Election Law, the GDC can evade those protections.

The Supreme Court has held that while Article I of the Constitution permits states to regulate elections, that permission is not intended to be "a source of power to dictate electoral outcomes, to favor or disfavor a class of candidates, or to evade important constitutional restraints." U.S. Term Limits, Inc. v. Thornton, 514 U.S. 779, 833-34 (1995); cf. Davis v. Bandemer, 478 U.S. 109, 166 (1986) (Powell, J., concurring in part and dissenting in part) (in redistricting context, "the State should treat its voters as standing in the same position, regardless of their political beliefs or party affiliation"). While distinctions among groups—such as political parties—is not inherently unconstitutional, it will nevertheless violate the Equal Protection Clause if that distinction is "invidious, arbitrary, or irrational." Barr v. Galvin, 626 F.3d 99, 109 (1st Cir. 2010) (citing Clements v. Fashing, 457 U.S. 957, 967 (1982).

For the reasons discussed, plaintiffs have asserted that GDC and Crawford abused their delegated authority to ensure that their selected candidate received the nomination for Town Justice, in violation of plaintiffs' rights as candidate and voter. Thus, the Complaint sufficiently alleges claims under the Fourteenth Amendment, remediable by 42 U.S.C. § 1983.

**E.** **New York Election Law § 6-108 is unconstitutional as applied to plaintiffs.**

Section 6-108 of the New York Election Law permits political parties in the State of New York to either take advantage of the primary election that is held by the local boards of elections, or to convene a caucus, for local elections. Because the caucus system permits rank abuse by political parties that violate the First and Fourteenth

Amendment rights of candidates and voters such as plaintiffs, section 6-108 should be held unconstitutional as applied to plaintiffs.

As an initial matter, contrary to Wier's insistence that plaintiffs failed to comply with their obligation to notify the New York State Attorney General that the constitutionality of N.Y. Election Law § 6-108 is challenged, a Notice to the Attorney General pursuant to Fed.R.Civ.P. 5.1(a) was filed on July 18, 2018, and was timely served with all case filings on July 20, 2018, in compliance with this Court's directive for service prior to the TRO hearing (see Docket Entries 7 and 10). Thus, all prerequisite measures were taken.

Turning to the merits, "[t]he right to associate with the political party of one's choice is an integral part" of the freedom of association guaranteed by the First and Fourteenth Amendments. <u>Kusper v. Pontikes</u>, 414 U.S. 51, 56-57 (1973). The standard of review applicable to constitutional challenges to election-related laws is determined under a balancing test.  In determining the validity of an election statute, the Court

> must first consider the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate. It then must identify and evaluate the precise interests put forward by the State as justifications for the burden imposed by its rule. In passing judgment, the Court must not only determine the legitimacy and strength of each of those interests; it also must consider the extent to which those interests make it necessary to burden the plaintiff's rights. Only after weighing all these factors is the reviewing court in a position to decide whether the challenged provision is unconstitutional.

<u>Anderson v Celebrezze</u>, 460 U.S. 780, 789 (1983).

In <u>Burdick v. Takushi</u>, 504 U.S. 428, 434 (1992), the Court expanded upon this concept, crafting a "flexible standard" whereby:

the rigorousness of [the Court's] inquiry into the propriety of a state election law depends upon the extent to which a challenged regulation burdens First and Fourteenth Amendment rights. Thus, as [the Supreme Court has] recognized when those rights are subjected to "severe" restrictions, the regulation must be narrowly drawn to advance a state interest of compelling importance. . . . But when a state election law provision imposes only "reasonable, nondiscriminatory restrictions" upon the First and Fourteenth Amendment rights of voters, the State's important regulatory interests are generally sufficient to justify" the restrictions.

Burdick, 504 U.S. at 434.

In Price v. New York St. Bd. of Elections, 540 F.3d 101 (2d Cir. 2008), the Second Circuit struck a statute that prohibited the use of absentee ballots in elections for party committeemen. Deciding that the prohibition imposed a burden on the plaintiffs' associational rights that was "not trivial," the court used the Burdick balancing test rather than the rational basis test. Price, 540 F.3d at 109-10. Applying that standard, the court found that the state failed to put forth substantive justification for the prohibition, warranting a determination that the statute was unconstitutional. Id. at 110-12.

Price requires the same result here, and in fact, the burdens on plaintiffs' associational rights are even more onerous here. Like in Price, the Complaint alleges that absentee ballots are not available with respect to GDC's caucus, but moreover, the caucus was convened by the party leadership and held in one location, on one day, at one specific time, in a park whose publicized policy requires patrons to either affix a sticker to their vehicle or pay an admission fee. Because the caucus placed multiple burdens on plaintiffs' rights, the Court here should apply the same burden as in Price.

The New York Attorney General has declined to intervene, despite being served with the commencing documents, preliminary injunction motion papers, and notice of a constitutional question. Therefore, it is impossible to know what precisely the State's

19

rationale is for permitting one party to select a means of nomination that insulates itself from nearly every protection afforded to voters and candidates alike. Accordingly, at the very least, it is appropriate to deny dismissal of this cause of action in order to permit the Attorney General the opportunity to justify the statutory disparity. Alternatively, for the reasons discussed above, there could not be any conceivable basis to permit a major party like the Democratic Party to avail itself of such a suspect process.

The statute challenged here, to be sure, is not proscriptive like the one challenged in Price, but rather, is permissive, insofar as it grants political parties the right to use a means of selecting nominees that violates the Equal Protection Claim. However, that distinction should make no difference in this Court's constitutional analysis. In Tennessee v. Garner, 471 U.S. 1 (1985), for example, the Supreme Court invalidated a statute that permitted the use of deadly force against any fleeing individual suspected of a felony. Garner, 471 U.S. at 11. Thus, in the as-applied context of the challenge to N.Y. Election Law § 6-108, the fact that the law allows the mischief complained of here, rather than placing an unconstitutional limit on conduct, does not change the analysis.

The movants argue that the Court should uphold the associational rights of the political party, as distinct from those of candidates and voters, and should therefore find that the disparities plaintiffs identify are not actionable. However, while there is undoubtedly authority permitting political parties latitude in nominating and promoting their chosen candidates, courts have placed limits on that authority. In a dissent from

the majority in <u>California Democratic Party v. Jones</u>, 530 U.S. 567 (2000),[2] Justice Ginsberg argued that it would be permissible for a state to require parties to use primary elections rather than caucuses to select their nominees. <u>California Democratic Party</u>, 530 U.S. at 594 (Ginsburg, J., dissenting). She reasoned, much like plaintiffs argue here, that "[t]he reason a State may impose this significant restriction on a party's associational freedoms is that both the general election and the primary are quintessential forms of state action." <u>Id.</u> Justice Ginsburg relied upon the "White Primary Cases," which held that political organizations could not take actions to prevent non-Caucasian voters from voting in primary elections. <u>See</u> <u>Terry v. Adams</u>, 345 U.S. 461 (1953); <u>Smith v. Allwright</u>, 321 U.S. 649 (1944).

In deciding the White Primary Cases, the Court rejected the political organizations' arguments that they were simply engaging in private behavior because that behavior had the effect of depressing the minority vote. Likewise, here, because section 6-108 permits political parties to subvert the democratic processes protected by the Election Law, this Court should find that the parties' associational rights must yield to plaintiffs' rights under the First and Fourteenth Amendments. N.Y. Election Law § 6-108 should be declared unconstitutional.

**F.      Plaintiffs' claims under the ADA and the NYSHRL should not be dismissed.**

The movants argue that because defendant Wier immediately offered to implement a variety of accommodations to render the caucus location compliant with the Americans With Disabilities Act, there is no longer a justiciable case (see Def. Mem. of Law, p. 6, citing Docket No. 30, p. 15). However, movants ignore the fact that the

---

[2] The holding in <u>California Democratic Party</u> invalidated a state law that converted the state's primaries from closed to open, whereby any voter could vote for any candidate regardless of voter's or candidate's party affiliation. Thus, the majority opinion was not relevant to the case at bar.

Decision and Order required them to undertake measures that went beyond the offered accommodations in order to comply with the ADA (Docket No. 30, pp. 18-19). Movants concede that the accommodations were made only in response to this litigation. Since the Court's directives were handed down two days before the caucus, disabled voters familiar with Tawasentha Park would have been deterred from attending because of the otherwise present ADA violations. See Kreisler v. Second Ave Diner Corp., 731 F.3d 184, 188 (2d Cir. 2013) (disabled plaintiff who never entered defendant diner had standing to assert ADA claim because violations deterred her from patronizing diner).

In any event, there is the very real possibility that defendants will abandon any compliance efforts made during this year's caucus at subsequent caucuses. Thus, for the reasons discussed above, these claims fall squarely within the "capable of repetition, yet evading review" exception to the mootness doctrine, and the claims therefore remain viable.

## CONCLUSION

For the foregoing reasons, plaintiffs respectfully ask this Court to deny GDC, Crawford, and Wier's motions in all respects.

DATED:    Albany, New York          Respectfully Submitted,
            October 29, 2018

                                   NAPIERSKI, VANDENBURGH,
                                   NAPIERSKI & O'CONNOR, LLP

                    By:    s/ Andrew S. Holland
                            ANDREW S. HOLLAND
                            Bar Roll No. 517545
                            *Attorneys for Plaintiffs*
                            296 Washington Ave. Ext., Suite 3
                            Albany, New York 12203
                            (518) 862-9292