UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

CHRISTINE M. NAPIERSKI, an aggrieved candidate
for public office in the Democratic Party, and
EUGENE E. NAPIERSKI, an enrolled voter of the
Democratic Party residing in the Town of
Guilderland, New York,

      Plaintiffs,

  -against-

THE GUILDERLAND DEMOCRATIC COMMITTEE,
THE ALBANY COUNTY DEMOCRATIC
COMMITTEE, JACOB CRAWFORD, Individually
and as Chairman or Acting Chairman, Guilderland
Democratic Committee, JACK FLYNN, Individually
and as Chairman, Albany County Democratic
Committee, ALBANY COUNTY BOARD OF
ELECTIONS, MATTHEW J. CLYNE, in his official
capacity as Commissioner, Albany County Board
of Elections, RACHEL L. BLEDI, in her official
capacity as Commissioner, Albany County Board
of Elections, BRYAN M. CLENAHAN, Candidate
for Guilderland Town Justice, and GREGORY J.
WIER, Candidate for Guilderland Town Highway
Superintendent,

      Defendants.

Case No. 1:18-cv-846
(GTS/DJS)

---

REPLY MEMORANDUM OF LAW OF DEFENDANTS THE GUILDERLAND
DEMOCRATIC COMMITTEE AND JACOB CRAWFORD

---

Dated: November 5, 2018

By: _____
Daniel J. Centi
Bar Roll #505609
Feeney and Centi
Attorneys for GDC and Crawford
127 Great Oaks Blvd.
Albany, New York 12203
Tel.: (518) 452-3710
E-mail: DCenti@lawfcm.com

# TABLE OF CONTENTS

|  | Page |
|---|---|
| INDEX OF AUTHORITIES………………………………………………… | iii |
| PRELIMINARY STATEMENT………………………………………….. | 1 |
| I. PLAINTIFFS FAILED TO SUFFICIENTLY CLAIM THAT THE GDC AND CRAWFORD VIOLATED THE AMERICANS WITH DISABILITIES ACT………………… | 1 |
| II. PLAINTIFFS' "POLL TAX" CLAIM IS MOOT………………… | 3 |
| III. PLAINTIFFS' EQUAL PROTECTION CLAIMS OF THEIR THIRD, FOURTH AND FIFTH CAUSES OF ACTION FAIL AS A MATTER OF LAW………………………….. | 4 |
| IV. PLAINTIFFS FAIL TO STATE A CLAIM UNDER THE NYS HUMAN RIGHTS LAW………………………………… | 7 |
| CONCLUSION………………………………………………………………… | 7 |

# INDEX OF AUTHORITIES

**Caselaw:** **Page**

<u>NYS Board of Elections v. Lopez Torres</u>, 552 U.S. 196 (2008)............. 5,6

<u>United Spinal Ass'n v. Board of Elections in City of New York</u>,
882 F.Supp.2d 615 (SDNY 2012)............................................. 2

**Statutes:**

42 U.S.C. § 1983............................................................... 6

42 U.S.C. § 12182............................................................. 1,2

New York's Election Law Article 6........................................... 4

New York's Executive Law § 296............................................. 7

**Misc.**

Black's Law Dictionary, Fifth Ed., p. 812.................................... 2

Black's Law Dictionary, Fifth Ed., p. 830.................................... 3

## PRELIMINARY STATEMENT

In their complaint, the plaintiffs make several claims against The Guilderland Democratic Committee ("GDC"), sued through their chairman Jacob Crawford ("Crawford").

The plaintiffs have sued Crawford in his individual capacity also, although the allegations of the complaint do not contain allegations of fact amounting to culpable conduct of him individually.

In any event, all of the claims against these defendants fail as a matter of law and judgment on the pleadings dismissing the complaint should be awarded to the GDC and Crawford.

### I. PLAINTIFFS FAILED TO SUFFICIENTLY CLAIM THAT THE GDC AND CRAWFORD VIOLATED THE AMERICANS WITH DISABILITIES ACT.

In our opposition to plaintiffs' motion to enjoin the holding of the caucus herein, we argued that the GDC and Crawford are not public entities under the ADA. This Court did not question our assertion, but opined that plaintiffs' ADA claim is based upon the caucus being held at a place of public accommodation, which was leased by the GDC.

Plaintiffs alleged that "The Town of Guilderland charges a fee to reserve and use the Large Pavilion," "the GDC paid a fee of $150.00 to use the Large Pavilion" and "the fee constitutes a lease payment as the term 'leases' is used in 42 U.S.C. § 12182." (Complaint, pars. 67-69).

First, no allegation is made by plaintiffs that Crawford paid a fee to reserve and

1

use the Large Pavilion. Therefore, no basis whatsoever makes him a proper party defendant on this claim.

The claim against the GDC should fail also. Plaintiffs did not allege that the GDC failed to undertake some feasible measure to improve accessibility to the site. <u>United Spinal Ass'n v. Board of Elections in City of New York</u>, 882 F.Supp.2d 615 (SDNY 2012). If plaintiffs make a *prima facie* showing of discrimination in violation of the ADA and RA, they have the additional burden of "articulating reasonable accommodations that the defendant can make in order to comply with the ADA and RA" <u>Id</u>. <u>quoting Kerrigan v. Philadelphia Board of Elections</u> (ED Pennsylvania 2008), 2008 U.S. Dist. LEXIS 62263.

Also, although the allegation is that the GDC's payment to "reserve and use" is a "lease payment" under 42 U.S.C. § 12182, that interpretation is not justified. We agree the cited statute does make a person who "leases" a public accommodation subject to the ADA. However, the GDC purchased the right to use the Large Pavilion, and did not obtain a conveyance of an estate at the Park. A lessee is "one who rents property from another. In the case of real estate, the lease is also known as the tenant. He to whom a lease is made. He who holds an estate by virtue of a lease…" (Black's Law Dictionary, Fifth Ed., p. 812.)

The alleged payment of the GDC was to reserve and use, and that's it. At most, the GDC was licensed to use the Large Pavilion. A licensee is "a person who has a privilege to enter upon land arising from the permission or consent, express or implied, of the possessor of land but who goes on the land for his own purpose rather

2

than for any purpose or interest or interest of the possessor." A "license fee or tax" is a "charge imposed by sovereign for a privilege." (Black's Law Dictionary, Fifth Ed., p. 830.)

No Town would ever intend or agree that the permission to use its facility for a few hours would endow the user with the status of tenant, whose significant rights under the law would include the right not to be removed except by a legal proceeding. As another example, plaintiffs alleged the Town of Guilderland charges an entrance fee to certain entrants to Tawasentha Park. (The fee was not imposed respecting the caucus event.) That fee to enter and use the Park, whether for a concert or a brief family picnic, does not convert such entrants into "tenants."

Finally, plaintiffs complain that the accommodations made herein were made only after plaintiffs sued. That is not of any significance under the law. The opportunity to address accommodations arose only after plaintiffs complained by the suit itself. And plaintiffs ignore that most of the accommodations were made by the only party with authority to make them, i.e. the Town of Guilderland, which was in fact not sued by plaintiffs.

## II. PLAINTIFFS' "POLL TAX" CLAIM IS MOOT.

In their second cause of action, plaintiffs' alleged that the Town of Guilderland was going to charge an entry fee to some entrants of Tawasentha Park on the evening of the caucus, and plaintiffs sought to enjoin the GDC from conducting its caucus at the park. However, the caucus has been held, the Town did not collect any entry fees and plaintiffs' claim for relief is moot.

## III. PLAINTIFFS' EQUAL PROTECTION CLAIMS OF THEIR THIRD, FOURTH AND FIFTH CAUSES OF ACTION FAIL AS A MATTER OF LAW.

Again, we have adopted the equal protection points made by defendant Weir in his motion to dismiss, and will not restate them here.

Suffice to say that plaintiffs have failed to allege that they were treated differently than similarly situated persons. They have merely alleged (Complaint, par. 97) that by use of the caucus system, "candidates and voters in the Democratic Party in the Town of Guilderland are denied the fair, enfranchising, legal means to place a candidate on the general election ballot that those candidates and voters in the other political parties enjoy." In this context, the voters enrolled in other parties are not similarly situated to Guilderland's enrolled Democrats, who are the only ones who may vote in the Democratic caucus.

Plaintiffs concede that the caucus method is legally authorized in New York. They have alleged that the petition (or "primary") system has discrete protections not afforded by a caucus.

The caucus system is obviously meant to provide a nominating method as an alternative to the extremely burdensome petition system. New York's Election Law Article 6 contains a host of statutes governing the petition process. They cover, *inter alia*, formulas for calculating required signatures, required content of petitions, permitted commencement dates of petitioning, deadlines for filing petitions and locations for filing, the use of notaries public, use of tabulation sheets, binding of petitions, and countless other subjects containing potential landmines for the

4

uninitiated. By the unitiated, we mean anyone not an experienced election lawyer.

As plaintiffs allege, Guilderland has 9,202 enrolled Democrats spread across 58 square miles (Complaint, pars. 32, 37 and 50). As contrasted with a caucus, petitioning is a complicated, potentially expensive, and certainly exhausting process. Those who desire to actually participate in collecting signatures on petitions "door to door" had best be physically fit. This is especially true in a suburban town such as Guilderland, with its hills, many neighborhoods without sidewalks, and many homes with deep setbacks from the streets.

The GDC has a statutory right to choose the caucus method of nomination, and that method is constitutionally permitted. In our Memorandum of Law in opposition to plaintiff's application for a preliminary injunction we cited <u>NYS Board of Elections v. Lopez Torres</u>, 552 U.S. 196 (2008), which is cited also by defendant Weir in his motion to dismiss. In that case, the Court held that political parties have an associational right to choose a candidate selection process that will, in its view, produce a nominee that best represents its platform. The Court ruled that New York's judicial convention system of nominating Supreme Court Justice candidates was a permissible manner of candidate selection that was not analogous to ballot-access requirements that unduly inhibit an "unsupported candidate" from vying for the party nomination. The Court's words at 205-206 are pertinent here:

> Respondents' real complaint is not that they cannot vote in the election for delegates, nor even that they cannot run in that election, but that the convention process that follows the delegate election does not give them a realistic chance to secure the party's nomination. The party leadership,

5

>they say, inevitably garners more votes for its slate of delegates (delegates uncommitted to any judicial nominee) than the unsupported candidate can amass for himself. And thus the leadership effectively determines the nominees. But this says nothing more than that the party leadership has more widespread support than a candidate not supported by the leadership. No New York law compels election of the leadership's slate – or, for that matter, compels the delegates elected on the leadership's slate to vote the way the leadership desires. And no state law prohibits an unsupported candidate from attending the convention and seeking to persuade the delegates to support her.

The Lopez case reaffirms that the party convention process (tantamount to a party caucus) is a permissible means for a political party to settle intra-party competition before the general election. In their Memorandum in Opposition (p. 15), plaintiffs seek to avoid this holding by arguing the "critical distinction" between Lopez and our case is that the statute in Lopez "provided for nominating conventions as the only means to select a candidate for that particular office." That distinction is not given any significance under any law cited by plaintiffs.

Inasmuch as plaintiffs have failed to state claims of denial of constitutional rights, their fifth cause of action under 42 U.S.C. § 1983 should be dismissed.

Moreover, plaintiffs' allegations that the GDC and Crawford acted "under color of state law", as opposed to private parties not subject to § 1983, are false on their face. Plaintiffs' claims do not concern the Voting Rights Act or a general election. The pertinent allegations are: "the GDC has exclusive control over the identity of the candidate that appears in the Democratic Party's column for Guilderland Town Justice on the ballot" and the GDC "has full, complete, and exclusive control over ballot

6

access for any eligible Democrat...", and "the GDC is making a de facto appointment of a public official with no meaningful input from the electorate...In light of all of the foregoing, defendants GDC, Crawford, ACDC and Flynn are acting under color of state law." (Complaint, pars. 107, 108, 110 and 112.)

Actually, the enrolled Democrats who appear at the caucus and cast their votes, and not the GDC or Crawford, are those who determine the Democratic candidate for the subject position. That is why the entire thrust of this suit is plaintiffs' argument that the caucus diminishes the turnout for their favored candidate.

## IV. PLAINTIFFS FAIL TO STATE A CLAIM UNDER THE NYS HUMAN RIGHTS LAW.

In plaintiffs' sixth cause of action, they claim a violation of the NYS Human Rights Law. However, that cause of action should be dismissed for the same reasons as their ADA claim.

Additionally, plaintiffs did not allege in their complaint that Crawford is within any possible category of possible defendants listed under New York's Executive Law § 296.

## CONCLUSION

Defendants GDC and Crawford should be granted judgment on the pleadings dismissing the complaint in its entirety.